**AEROVOX CORPORATION OF MYRTLE BEACH, SOUTH CAROLINA, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 12565.**

United States Court of Appeals Fourth Circuit.

Argued Jan. 10, 1969.

Decided April 18, 1969.

---

Wm. H. Smith, Jr. (Smith & Smith, on brief), for petitioner.

Kenneth Pearlman, Atty., N. L. R. B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Elliott Moore, Atty., N. L. R. B., on brief), for respondent.

Before BOREMAN, WINTER and CRAVEN, Circuit Judges.

WINTER, Circuit Judge:

Aerovox Corporation of Myrtle Beach, South Carolina (the "company"), peti-

tions to review and set aside an order of the Board which, predicated upon findings that the company had violated §§ 8 (a) (5) and 8(a) (1) of the Act, directed the company to cease and desist from refusing to bargain collectively with Local Union No. 382, International Brotherhood of Electrical Workers, AFL–CIO (the "union") and from interfering with the efforts of the union to represent the employees as their exclusive bargaining representative. The Board's cross-petition seeks enforcement of the order, and we grant it.

On July 27, 1967, the production employees in the company's plant voted in a secret ballot election to determine if the union should act as their collective bargaining representative. The union prevailed in the election by a margin of 335 to 307, with 18 challenged ballots not counted since they could not affect the result. The company filed timely objections to the election. The company's principal complaint was that a handbill distributed by the union the day before the election contained substantial misrepresentations of fact, which destroyed the conditions necessary to a free and fair election. The handbill in its entirety is set forth in the margin.[1]

After an administrative investigation, during the course of which the various parties were afforded an opportunity to present such evidence as they desired to submit, the regional director found that the union's representation that the Burbank plant was operating full-time was incorrect. In fact, that particular plant ceased operations on July 1, 1967, but was reopened shortly thereafter by a subsidiary of the company, with a work force not represented by the union. When reopened, this plant engaged in the manufacture of microcircuits, an operation entirely different from that previously conducted there. The regional director declined to set aside the election, because he found (a) the facts concerning the contract covering employees at the Burbank plant and its operational status were not facts within the peculiar knowledge of the union, but were fully known to the company at all material times, (b) the issue concerning the operational status of the Burbank plant had been raised nine weeks prior to the election, and the company had "extensively" availed itself of the opportunity to state its position with regard to this issue, so that the handbill did not raise the issue for the first time but was,

---

1.            "CONGRATULATIONS—PRODUCTION EMPLOYEES

LETTERS OF CONGRATULATIONS have been received from the I.B.E.W. Local Unions that have contracts covering the employees of Aerovox Corporation's other plants and *working full time.*

Burbanks [sic], California—Local Union #1710—This plant was organized in 1961. Contract still in effect— Plant operating full time.

Olean-Franklinville, New York—Local Union #1690—Contract recently renewed for the next three (3) years— full production.

New Bedford, Mass.—        Local Union #1754.

Each letter contained basically the same general thought. All of them congratulate you on your actions taken and trust that you will win your election on the 27th of July, 1967, and welcome you into the family of the I.B.E.W.

We are proud of our *NO* lost time record. In the plants that have been organized—no time has been lost! no plant has been closed! ,

Aerovox Organizing Committee<br>Myrtle Beach, South Carolina"

rather, the last round in a lengthy exchange of propaganda by both parties, and (c) in any event, even though the handbill was distributed to the employees the day before the election, the company had an adequate opportunity to rebut the statements contained therein, if it had so desired.

The Board rejected the company's request for a review of the regional director's decision on the theory that no substantial issues had been raised requiring such review, but the Board explicitly disavowed the regional director's reliance upon the fact that the company could have rebutted the representations in the handbill. The Board stated that, "it is sufficient that employer has previously informed employees that said plant [the Burbank plant] had ceased operations."

The union was certified as the employees' exclusive bargaining representative, and when the company refused to bargain a complaint charging violations of §§ 8(a) (5) and 8(a) (1) was issued. The trial examiner granted general counsel's motion for summary judgment, justifying his refusal to hold an evidentiary hearing by referring to established Board policy not to permit relitigation of issues which were or could have been litigated in a prior proceeding absent a showing of newly discovered or previously unavailable evidence. His action was sustained by the Board.

We must consider (1) whether the nature of the misrepresentations in the handbill and the circumstances of its distribution to the employees were sufficient to vitiate the election, and (2) whether the Board proceeded properly in sustaining the grant of summary judgment, thereby denying the company's request for an evidentiary hearing.

I

Preliminarily, it is appropriate to reiterate what has been often stated by this court, as well as many others, namely, that the "control of the election proceeding and the determination of the steps necessary to conduct that election fairly were matters that Congress entrusted to the Board alone." Schneider Mills, Inc. v. NLRB, 390 F.2d 375, 378 (4 Cir. 1968), quoting NLRB v. Waterman S. S. Corp., 309 U.S. 206, 226, 60 S. Ct. 493, 84 L.Ed. 704 (1940) It is the Board which is afforded a wide degree of discretion in establishing and maintaining those conditions which in its view will provide for the employees the maximum opportunity freely and fairly to determine which organization, if any, will be designated to represent their collective economic interests. NLRB v. A. J. Tower Co., 329 U.S. 324, 330, 67 S.Ct. 324, 91 L.Ed. 322 (1946); Olson Rug Co. v. NLRB, 260 F.2d 255, 256–257 (7 Cir. 1958); NLRB v. Shirlington Supermarket, Inc., 224 F.2d 649, 651 (4 Cir.), cert. den., 350 U.S. 914, 76 S.Ct. 198, 100 L. Ed. 801 (1955). Thus, only those false statements which are demonstrated to have impaired this freedom of choice will cause an election to be set aside. Anchor Mfg. Co. v. NLRB, 300 F.2d 301, 303 (5 Cir. 1962). In short, the alleged misrepresentations "must be shown to have prejudiced the fairness of the election." NLRB v. Bata Shoe Co., 377 F.2d 821, 829 (4 Cir.), cert. den., 389 U.S. 917, 88 S.Ct. 238, 19 L.Ed.2d 265 (1967).

We believe that the Board correctly concluded that the circumstances under which the challenged handbill was distributed did not render impossible a free and uninhibited choice by the employees. First, we doubt that the thrust of the message of the handbill seriously misled the employees, even though, inaccurately, it implied that the union represented the new employees at Burbank by a then existing contract. The company vigorously insists that the phrase "no plant has been closed" must be read literally and was meant to convey the absolute assertion that no plant which the union had organized had been closed under any circumstances. But this interpretation ignores the fact that the phrase was employed in the course of a hard-fought organizational campaign in which one of the issues was whether or not *unionization* would tend to make

plant closings more likely, for example, because of strikes. Certainly, the union was in no position to represent that plants would not be closed or relocated in accordance with a legitimate management decision. Cf. Textile Workers v. Darlington Mfg. Co., 380 U.S. 263, 85 S. Ct. 994, 13 L.Ed.2d 827 (1965). See also, NLRB v. Kolmar Laboratories, Inc., 387 F.2d 833, 837 (7 Cir. 1967). The only representation which the union accurately could make was that *it* had not been, and would not in the future be, the cause of any plant closings. Under the circumstances surrounding its publication, we think this the more reasonable interpretation of the handbill in the mind of the average reader: The *union* had not been responsible for the closing of any plants. And, for all that appears in the record, the Burbank plant was closed as the result of an independent decision of management, unrelated to difficulties inspired by the union.

Secondly, it is highly significant that the issue of plant closings was not injected into the organizational campaign by the union at the last moment.[2] To the contrary, the issue of plant closings had been raised several weeks before the election, and on at least one occasion, July 20, company representatives specifically told the employees that the Burbank plant had been closed for economic reasons. Thus, to the extent that the handbill, considered in isolation, could have been interpreted to refer to plant closings for any reason whatever, the company not only had an adequate opportunity to publicize, but it did in fact inform the employees, what the real facts concerning the status of the Burbank plant were.

■ In view of the foregoing considerations, including the wide discretion accorded to the Board in supervising elections, we are bound to conclude that the Board did not abuse its discretion in refusing to set aside this election.

We have considered with care the numerous cases cited by the company in support of its position. Suffice it to say that in large measure each case must turn on its particular facts. In the instant case, we find none of the aggravated circumstances which impelled a majority of this court to set aside elections in, for example, Schneider Mills, Inc. v. NLRB, *supra,* and NLRB v. Bata Shoe Co., *supra.*

## II

■ The company also complains that the Board improperly disposed of the unfair labor practice charge by means of summary proceedings and, alternatively, that the company was denied a hearing upon review of the Regional Director's post-election investigation and decision. In essence, the company's position is that it has never had an adequate hearing at any stage of the proceedings. However, it is clear that the company is *not* entitled to a hearing, by constitutional mandate or otherwise, in the absence of a dispute concerning substantial and material factual issues. This is so whether the exception to the lack of a hearing is raised in post-election proceedings on the company's objections to the election, NLRB v. Bata Shoe Co., *supra,* at 825–826, or in unfair labor practice proceedings, NLRB v. Aerovox Corp., 390 F.2d 653 (4 Cir. 1968).

■ In the instant case, the factual circumstances are largely uncontroverted. There is no doubt that a representation was made, that the Board found it to be "erroneous" at least to some degree, and that the company had previously stated the correct facts to the employees. There was no material fact in dispute. The Board concluded from all of the circumstances that, as a matter of law, the handbill in question did not render the election invalid. We agree. No further factual inquiry was required.

Enforcement granted.

---

2. In the view which we take of the instant case we need not determine, assuming arguendo that a material misrepresentation had been made on a new and theretofore undiscussed topic, whether the company had had sufficient time to rebut the alleged misrepresentation.