651 F.2d 201
 Captain Shelby C. ROBERTS
v.
S. S. KYRIAKOULA D. LEMOS and Capetandiamentis Cia Mar S.A.,
a Greek Corporation
v.
The CITY OF WILMINGTON, the Board of Harbor Commissions,
Retla Steamship Company, Capetandiamentis Cia Mar
S.A., a Greek Corporation, Appellant.
 No. 80-2772.
 United States Court of Appeals,
Third Circuit.
 Submitted May 19, 1981.
Decided June 8, 1981.
 
 John T. Biezup, Edward J. Charlton, Palmer, Biezup & Henderson, Philadelphia, Pa., for appellant.
 Richard R. Wier, Jr., James P. Dalle Pazze, Prickett, Jones, Elliott & Kristol, Wilmington, Del., for appellee.
 Before GIBBONS, HUNTER and GARTH, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge.
 
 
 1
 Capetandiamentis Cia Mar S.A. (CCM), the successful defendant in a maritime tort action, appeals from the district court's affirmance of the District Court Clerk's disallowance of two items of costs. On August 4, 1977, following his fall from a gangway leading to appellant's vessel, Captain Shelby C. Roberts (Roberts), a Delaware River pilot, initiated an unseaworthiness action against CCM. On February 14, 1978, the district court on Roberts' motion ordered CCM to produce the Master of the vessel for deposition in Wilmington, Delaware. CCM flew Captain Petros Nikiforos from his home in Pireaus, Greece, to Roberts' counsel's office in Wilmington. The deposition was videotaped and was introduced at the subsequent trial. At trial, CCM also produced an expert witness, Paul J. Keeler, to testify concerning gangway safety standards. On July 13, 1979, the district court rendered a judgment in favor of CCM. This court affirmed by judgment order on March 21, 1980.
 
 
 2
 CCM then filed a bill of costs in the district court. On September 22, 1980, the Clerk of that court ordered taxation of various costs against Roberts, but denied the bulk of Captain Nikiforos' travel expenses to and from the United States, and denied Mr. Keeler's expert witness fee. The Clerk disallowed the travel expenses on the ground that "mileage in excess of the '100 mile rule' is at the discretion of the trial judge not the Clerk." Appendix 155 n.2. Concerning the expert's fee, the Clerk stated:
 
 
 3
 Pursuant to Local rule 6.1(B)(4), fees of expert witnesses are not ordinarily taxable in an amount greater than that statutorily allowable for ordinary witnesses; however, the Court may allow, in its discretion, a reasonable amount as an additional award for expert witnesses, provided the Court finds that the expert's testimony was not only helpful but also played a crucial role in the resolution of the issues presented. Therefore the request for expert fees for Mr. Keeler will be disallowed by the Clerk.
 
 
 4
 Appendix 154 n.4.
 
 
 5
 On September 26, 1980, CCM filed a Federal Rule of Civil Procedure 54(d) motion for review of costs, contesting the denial of these two items. On November 10, the district judge entered an order summarily affirming most of the Clerk's assessment, but awarding an additional sum to cover the costs of transcripts and copies of exhibits. We reverse the denial of Captain Nikiforos' travel expenses. We also reverse the district court's denial of the expert witness' fee.
 
 Travel Expenses
 
 6
 Since the Supreme Court's decision in Farmer v. Arabian American Oil Co., 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964), award of witness' travel expenses beyond 100 miles has been within the discretion of the district court. Before Farmer, many federal courts had assumed that the taxable mileage allowance for witnesses under 28 U.S.C. § 1821 corresponded to the 100 mile reach of the court's subpoena power. See, e. g., Spiritwood Grain Co. v. Northern Pac. Ry. Co., 179 F.2d 338 (8th Cir. 1950); Lee v. Pennsylvania R. Co., 93 F.Supp. 309 (E.D.Pa.1950). In Farmer, the Court, while declining to invalidate the "100 mile rule" in all cases, remitted the issue to the discretion of district courts. Accordingly, most courts now recognize that restrictions on their subpoena power are no barrier to taxing as costs the travel expenses of a prevailing party's witness who appears from beyond the court's reach. See generally 10 C. Wright & A. Miller, Federal Practice and Procedure, § 2678 at 231-34 & cases cited n.42 (1973).
 
 
 7
 The "100 mile rule" may be of particularly dubious application when the witness travels from abroad. The version of 28 U.S.C. § 1821 in force at the time of this action stated:
 
 
 8
 Provided that, in lieu of the mileage provided for herein, witnesses who are required to travel between the territories and possessions or to and from the continental United States, shall be entitled to the actual expenses of travel at the lowest first class rate available at the time of reservation for passage, by means of transportation employed....
 
 
 9
 28 U.S.C. § 1821 (1964). The language of the statute would seem to supercede the mileage restrictions pertinent to untra-United States travel. If so, the prevailing party whose witness travels from abroad would clearly be entitled to recover the cost of passage.[1]
 
 
 10
 While there is little doubt that a witness' expenses incurred in traveling to and from the United States may be recovered, some courts have held award of these costs a matter of discretion, see, e. g., Scientific Holding Co. Ltd. v. Plessey Inc., 510 F.2d 15 (2d Cir. 1974) (by implication); Kaiser Indus. Corp. v. McLouth Steel Corp., 50 F.R.D. 5 (E.D.Mich.1970); Rosenthal v. Brangier, 37 F.R.D. 248 (D.Haw.1965), while others have held § 1821 mandated their award, see, e. g., Oscar Gruss & Son v. Lumbermens Mut. Cas. Co., 46 F.R.D. 635 (S.D.N.Y.1969); Dunn v. Merrill Lynch, Pierce, Fenner & Smith Inc., 279 F.Supp. 937 (S.D.N.Y.1968).[2]
 
 
 11
 We need not here decide whether 28 U.S.C. § 1821 requires taxation of a witness' expenses incurred in traveling to and from the United States. In this case, the district court ordered CCM to produce Captain Nikiforos from overseas. Award of travel costs generally resides within the district court's discretion. Where, as here, however, the witness appears pursuant to a court order made on the losing party's motion, we believe it an abuse of discretion not to award costs that would not have been incurred but for that court's order, unless the losing party demonstrates circumstances warranting an exercise of discretion in his favor. Captain Roberts has made no such showing.[3] Accordingly, we reverse the denial of the bulk of CCM's travel costs and remand to the district court with a direction to award appellant the full $1717 it expended in bringing Captain Nikiforos to Wilmington.
 
 Expert Witness' Fee
 
 12
 CCM also maintains the district court abused its discretion in failing to award expert witness fees. Roberts, however, asserts that expert witnesses are entitled to no more than the regular statutory witness fees allowed in 28 U.S.C. § 1821. He points out that the Clerk awarded the statutory fee, and argues that the district court had no discretion to increase that award. Roberts cites considerable caselaw and treatise authority for this proposition. Most notably, he stresses Henkel v. Chicago, St. P., M., & O. R. Co., 284 U.S. 444, 52 S.Ct. 223, 76 L.Ed. 386 (1932). The Supreme Court there stated:
 
 
 13
 Under (the predecessor statute to § 1821) additional amounts paid as compensation, or fees, to expert witnesses cannot be allowed or taxed as costs in cases in the federal courts. The Congress has dealt with the subject comprehensively and has made no exception of the fees of expert witnesses.
 
 
 14
 284 U.S. at 446, 52 S.Ct. at 224.
 
 
 15
 Roberts' contention implicitly calls into question the validity both of our recent decision in Walker v. Robbins Hose Co. No. 1, 622 F.2d 692 (3d Cir. 1980), and of District of Delaware Local Rule 6.1B(4). In Walker, we declined to decide "whether expert fees are allowable as costs in this circuit. Assuming arguendo that such fees are allowable," we held "it would be within the district court's discretion to award the fees in any particular case." 622 F.2d at 694. The District of Delaware rule, enacted two and a half months following our decision in Walker, places that discretion in the district court.[4] It provides:
 
 
 16
 Fees of expert witnesses are not ordinarily taxable in an amount greater than that statutorily allowable for ordinary witnesses; however, the Court may allow, in its discretion, a reasonable amount as an additional award for expert witnesses, provided the Court finds that the expert's testimony was not only helpful to the Court but also played a crucial role in the resolution of the issues presented.
 
 
 17
 If Roberts is correct as a matter of law that expert fees may never be taxed above the amount § 1821 provides for ordinary witnesses, we must declare the District of Delaware Local Rule inconsistent with statute and judicial precedent. We turn, therefore, to appellee's legal contention.
 
 
 18
 While this Circuit has never explicitly ruled on the issue, a long line of decisions, including some from district courts within this Circuit, have upheld the general rule that federal courts have no authority to tax as costs the compensation of expert witnesses in excess of the statutory attendance per day, mileage, and subsistence allowances provided in 28 U.S.C. § 1821. See, e. g., Henkel, supra; Harrisburg Coalition Against Ruining The Environment v. Volpe, 65 F.R.D. 608 (M.D.Pa.1974); Quetel v. Querrard, 278 F.Supp. 341 (D.V.I.1968); see generally cases cited 10 Wright & Miller, supra at 236-37 n.62. Even a general rule, however, admits exceptions. In Commonwealth of Pennsylvania v. O'Neill, 431 F.Supp. 700 (E.D.Pa.1977) (Fullam, J.), aff'd. mem., 573 F.2d 1301 (3d Cir. 1978), we affirmed without opinion the district court's award of expert witness fees. In that case, the district court stated:
 
 
 19
 The defendants correctly argue that generally fees for expert witnesses cannot be recovered as costs. Recently, however, many courts have awarded expert's fees as costs where the expert's testimony was helpful to the court and played an important role in the resolution of the issues. I am in agreement with these insofar as they award expert fees as costs.
 
 
 20
 431 F.Supp. at 713 (citations omitted).
 
 
 21
 Examination of the decisions cited in O'Neill, as well as several other decisions, bears out Judge Fullam's characterization. See, e. g., Cagle v. Cox, 87 F.R.D. 467 (E.D.Va.1980); Welsch v. Likins, 68 F.R.D. 589 (D.Minn.), aff'd per curiam, 525 F.2d 987 (8th Cir. 1975); Wallace v. House, 377 F.Supp. 1192 (W.D.La.1974), m'dfd, 515 F.2d 619 (5th Cir. 1975); Sims v. Amos, 340 F.Supp. 691 (M.D.Ala.), aff'd, 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972); La Raza Unida v. Volpe, 57 F.R.D. 94 (N.D.Cal.1972), aff'd, 488 F.2d 559 (9th Cir. 1973), cert. denied, 417 U.S. 968, 94 S.Ct. 3171, 41 L.Ed.2d 1138 (1974). All these decisions, including O'Neill, however, are perhaps distinguishable. All involve civil rights actions, and many awarded expert witness fees in part on the ground that the award helped effectuate Congress' intent to encourage initiation of civil rights actions.
 
 
 22
 Civil rights actions, however, do not exhaust the realm of the exception. In Henkel, for example, the Supreme Court held a court may exercise its equitable discretion to award as costs the fees of a court-appointed expert even if they exceed the § 1821 allowance. 284 U.S. at 447, 52 S.Ct. at 225. Similarly, expert fees may be awarded if the losing party has conducted the case in a vexatious or oppressive manner. Kinnear-Weed Corp. v. Humble Oil & Refining Co., 441 F.2d 631, 637 (5th Cir. 1971). As a general proposition, one treatise has suggested:
 
 
 23
 There is some intimation that the court in the exercise of its general equitable power may permit an additional allowance to be taxed as costs, provided the court is satisfied that the situation is exceptional and the court makes an order to that effect prior to the expert being called.
 
 
 24
 6 Moore's Federal Practice P 54.77(5.-3) at 1735 (2d Ed. 1976), relying on Department of Highways v. McWilliams Dredging Co., 10 F.R.D. 107 (W.D.La.1950), aff'd, 187 F.2d 61 (5th Cir. 1951). Several courts have suggested or held that expert fees may be allowed when the expert's testimony is crucial to the case's resolution, and when the party has made a prior application to the court. See, e. g., Cagle v. Cox, supra; Quetel v. Querrand, supra (dictum) (prior application); Pizarro-de Ramirez v. Grecomar Shipping Agency, 82 F.R.D. 327 (D.P.R.1976) (dictum) (prior application).
 
 
 25
 Not all courts awarding expert fees as costs have required prior application. See, e. g., Worley v. Massey-Ferguson, Inc., 79 F.R.D. 534 (N.D.Miss.1978); Welsch v. Likins, 68 F.R.D. 589 (D.Minn.), aff'd per curiam, 525 F.2d 987 (8th Cir. 1975); Brooks v. Town of Sunflower, Civil Action No. GC 71-57-K (N.D.Miss. March 27, 1974). The central concern of all courts that have awarded expert fees as costs under Fed.R.Civ.P. 54(d) has focussed on the necessity of the expert's testimony. In Brooks, for example, the court overruled defendant's objection to inclusion of an expert witness fee in plaintiffs' bill of costs, stating:
 
 
 26
 The services of a consultant engineer was an absolute necessity for the proper development of plaintiffs' case, since the subject matter was of a technical nature, clearly beyond the knowledge of any lay citizen.... While the allowance of a fee for an expert employed by adversary litigants is to be viewed with caution, it is our view that the presentation of plaintiffs' claims required employment of a consulting engineer to review, analyze, and criticize the plans and technical data prepared by the professional engineers especially employed by the defendants.
 
 
 27
 quoted in Worley v. Massey-Ferguson Inc., 79 F.R.D. at 541. Similarly, in rejecting a claim for expert fees in Wade v. Mississippi Cooperative Services Inc., 64 F.R.D. 102 (N.D.Miss.1964), the court held the Wade expert to be insufficiently essential to the case's disposition. In contrast, it observed,
 
 
 28
 In Brooks, plaintiffs were wholly dependent upon technical engineering study to contest successfully the sufficiency of the Town's plans for installing a new municipal sanitary sewer system, extending water lines and furnishing other municipal services. Obviously, lay testimony in such a case was inappropriate and it was indispensible for the plaintiffs to obtain technical advice.
 
 
 29
 64 F.R.D. at 105. And in Welsch v. Likins, supra, the court held:
 
 
 30
 The court finds that these expert witnesses were an indispensable part of this trial. Their expertise in governmentally operated programs for the retarded was clearly reflected in their testimony and added greatly to the court's knowledge. This experience, coupled with their observations of the conditions at Cambridge (mental institution), enabled the court to fashion not only necessary but practical requirements to relieve the conditions that exist there.
 
 
 31
 68 F.R.D. at 597.
 
 
 32
 The court in Welsch also suggested that award of expert fees when expert testimony is indispensable to resolution of the decision does not in fact conflict with prior Supreme Court precedent. As a general matter, the Welsch Court observed
 
 
 33
 Although ... expert witness fees are not taxed as a matter of course, 6 Moore's Federal Practice Para. 54.77(5.-3) at 1734 ... the Court has considerable discretion to award these fees when it feels they were particularly necessary under the circumstances of the individual case. See Farmer v. Arabian American Oil Co.
 
 
 34
 68 F.R.D. at 596. The Welsch Court was aware of the Supreme Court's Henkel decision (it is prominently cited in the excerpt from Moore's). Nonetheless, the district court seemed to suggest that Farmer had qualified Henkel. This suggestion warrants examination. In Farmer, the Supreme Court upheld the district court's denial of travel expenses and stenographer's fees. The district judge had suggested that the prevailing party had deliberately run up a "huge bill of costs." 379 U.S. at 235, 85 S.Ct. at 416. The Supreme Court wrote:
 
 
 35
 We think that under the circumstances (the district judge) could not be charged with any improper exercise of the discretion vested in him by Rule 54(d). We do not regard that Rule as giving district judges unrestrained discretion to tax costs to reimburse a winning litigant for every expense he has seen fit to incur in the conduct of his case. Items proposed by winning parties as costs should always be given careful scrutiny.... Therefore the discretion given district judges to tax costs should be sparingly exercised with reference to expenses not specifically allowed by statute. Such a restrained administration of the Rule is in harmony with our national policy of reducing insofar as possible the burdensome cost of litigation.
 
 
 36
 Id.
 
 
 37
 Farmer appears to hold that Rule 54(d) authorizes district judges to exercise discretion albeit "sparing" to award costs not specifically enumerated in § 1821. The Court seemed concerned to avoid taxation of unnecessary and possibly vexatious costs accumulated by a prevailing party. Hence the reference to a national policy in favor of restrained award of costs. It is important to note that the Court based its interpretation of Rule 54(d) not on a Henkel-like theory of statutory preclusion of costs not listed in § 1821, but on policy considerations militating against award of unenumerated costs.[5] A district court should therefore carefully scrutinize the prevailing party's bill of costs in order to assure that any award will compensate only those expenditures necessary to the litigation. While Farmer commands perhaps a tight-fisted exercise of discretion in order to insure moderation in the cost of litigation, it does not mandate parsimony to the extent of precluding recovery of legitimate and indispensable litigation expenditures.
 
 
 38
 We therefore agree with the District of Minnesota and the Eighth Circuit that Farmer affords a district court equitable discretion to award expert fees when the expert's testimony is indispensable to determination of the case. The principles emerging from Farmer and from the decisions awarding expert fees prove congruent to the District of Delaware rule: when the expert's testimony "played a crucial role in the resolution of the issues presented," a district court, in its discretion, may award expert fees. We therefore hold District of Delaware Local Rule 6.1B(4) consistent with 28 U.S.C. § 1821.
 
 
 39
 Turning to the facts of this case, Captain Roberts alleged an unsafe gangway occasioned his fall. It would seem, therefore, that expert testimony concerning gangway safety standards was crucial to resolving CCM's liability. The district court summarily upheld the Clerk's assessment denying expert fees. The Clerk, however, merely quoted the local rule, and stated that "therefore" no fee would be awarded. On this record, we simply cannot tell whether or not the court found Mr. Keeler's testimony crucial to the case. The court in its discretion may decline to award the expert's fee, but in our view, the court exercised no discretion one way or the other. An "abuse of discretion" standard of review may be generous and forgiving, but it does require the district court to afford some indication that it considered the necessity of Mr. Keeler's testimony. On this record, we discern no such indication. Accordingly, we will reverse the denial of expert fees, and will remand to the district court to exercise and to articulate its discretion under District of Delaware Local Rule 6.1B(4).
 
 CONCLUSION
 
 40
 The order denying travel expenses of Captain Nikiforos will be reversed with a direction that those expenses be awarded. The order denying award of an expert witness fee for Paul J. Keeler will be reversed with a direction that the ruling be reconsidered.
 
 
 41
 GARTH, Circuit Judge, concurring and dissenting:
 
 
 42
 I am in complete agreement with the majority's remand of the expert fee issue which allows the district court judge to exercise his discretion with respect to the shipowner's application. I also agree that where a court enters an order directing a witness to appear, it does not abuse its discretion in denying travel costs if the losing party demonstrates special, extreme or extraordinary circumstances warranting an exercise of discretion in his favor. I write separately only to emphasize that rather than directing the district court to enter an order granting these expenses, I would simply remand and permit the district court to exercise its discretion with regard to them.
 
 
 43
 As the majority states, the award of travel costs rests in the sound discretion of the district court judge. There is no question that the present record does not disclose any special, extreme, or extraordinary circumstances which could support the denial of Captain Nikiforos' travel costs. Nevertheless, contrary to the majority's holding that these costs must be awarded to the Captain, I believe that it is for the district court to explain in the first instance the manner in which it has exercised its discretion in denying such costs and its reasons for so doing. See ADM Corp. v. Speedmaster Packaging Corp., 525 F.2d 662 (3d Cir. 1975).
 
 
 44
 Accordingly, rather than direct the district court to award the Captain's travel costs, I would reverse and remand to the district court so that it may reconsider its denial of these travel costs in light of the foregoing standard.
 
 
 
 [1]
 But see Farmer, supra, 379 U.S. at 234, 85 S.Ct. at 416, in which the Supreme Court did not distinguish foreign from domestic travel expenses
 
 
 [2]
 The Second Circuit's decision in Arico v. Cie de Navegacion Transoceanique, 409 F.2d 1002 (2d Cir. 1969), may discredit these latter two decisions. There, the Second Circuit declined to overrule the district court's refusal to tax the costs of a witness' travel from Europe. The appellate court simply stated, "allowance of expenses is discretionary." 409 F.2d 1004
 
 
 [3]
 Cf. Ex Parte Peterson, 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed.2d 919 (1920), in which the Court upheld an award of auditor's and stenographer's fees stating:
 Federal courts have, sometimes by general rule, sometimes by decision upon the facts of a particular case, included in the taxable costs expenditures incident to the litigation which were ordered by the court because deemed essential to a proper consideration of the case by the court or jury.
 253 U.S. at 315, 40 S.Ct. at 548.
 
 
 [4]
 Appellee argues that district judges in Delaware do not in fact award expert fees. In Walker, for example, the District of Delaware denied the motion for expert fees, citing a prior District of Delaware decision, Chemical Bank v. Kimmel, 68 F.R.D. 679 (D.Del.1975). There, the court stated expert fees were not allowable in nondiversity cases. 68 F.R.D. at 680-81. Similarly, in Carlson v. Palmer, 472 F.Supp. 396 (D.Del.1979), the court held 28 U.S.C. § 1925 incorporated § 1821's limitation on witness fees in admiralty cases. 472 F.Supp. at 398. These decisions, however, all precede adoption of Local Rule 6.1B(4), which was enacted on August 1, 1980
 
 
 [5]
 One should note that Henkel preceded enactment of the Federal Rules of Civil Procedure