714 F.2d 804
 33 Fair Empl.Prac.Cas. (BNA) 1462,
32 Empl. Prac. Dec. P 33,760,
13 Fed. R. Evid. Serv. 1975
Monroe COLEMAN, Appellant,
v.
The CITY OF OMAHA, a Municipal Corporation; Mayor Albert
Veys; William McDonnell, Public Safety Director; Richard
Anderson, Chief of Police; Gary L. Troutman, Personnel
Director; individually and in their official capacities, Appellees.
 No. 83-1075.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Aug. 10, 1983.
Decided Aug. 16, 1983.
 
 Clyde A. Christian, Omaha, Neb., for appellant.
 James E. Fellows, Deputy City Atty., Thomas O. Mumgaard, Asst. City Atty., Omaha, Neb., for appellees.
 Before HEANEY, BRIGHT and McMILLIAN, Circuit Judge.
 McMILLIAN, Circuit Judge.
 
 
 1
 Monroe Coleman appeals from a final judgment entered in the District Court[1] for the District of Nebraska upon a jury verdict denying him back pay under the Age Discrimination in Employment Act (ADEA) and from rulings by the district court on certain evidentiary questions, liquidated damages and reimbursement for expert witness fees. For the reasons discussed below, we affirm in part and vacate and remand in part.
 
 
 2
 Coleman was employed by the City of Omaha, Nebraska, as Deputy Police Chief. He turned age 62 on April 11, 1981. The City had an ordinance requiring that all uniformed officers retire on reaching age 62 and applied that ordinance to Coleman. Coleman filed suit in federal district court alleging violations of the ADEA, 29 U.S.C. § 621 et seq., and the federal constitution. Before trial the constitutional claims were dismissed.
 
 
 3
 At the close of the evidence, the district court directed a verdict in favor of Coleman on the issue whether the City violated the ADEA.[2] The issue whether Coleman was entitled to back pay was presented to the jury. The jury accepted the City's contention that Coleman failed to mitigate his damages and awarded him zero dollars. The district court then considered what equitable prospective relief should be provided Coleman. The court held that the City had two choices: (1) the City could reinstate Coleman with back pay to June 18, 1982 (the date of the jury verdict) and make restitution of all retirement benefits, and Coleman could later be retired upon a showing that he could no longer perform his job duties for reasons other than age alone; or (2) the City need not reinstate Coleman but must continue to pay his salary beginning June 19, 1982, until he turned 64. The court provided this second alternative in view of impending reorganization of the City police department.
 
 
 4
 In later orders, the district court granted Coleman attorneys' fees and denied Coleman's motions for a new trial and for approval of inclusion of expert witness fees in the costs.
 
 
 5
 Both Coleman and the City appealed. The City later voluntarily dismissed its appeal, No. 83-1076. For reversal Coleman argues (1) the district court erred in refusing to admit at trial a letter from the Omaha Human Relations Department which was relevant to his failure to mitigate damages, (2) the jury instructions confused the jury about the letter, (3) he was entitled to back pay as a matter of law, (4) he is entitled to liquidated damages because the City's violation of the ADEA was willful, and (5) he should be awarded his expert witness fees as part of the costs. We will address each contention.
 
 
 6
 I. Admissibility of the Human Relations Department Letter
 
 
 7
 During a pretrial hearing, Coleman's attorney made an offer of all the exhibits he intended to introduce at trial. One of these exhibits was the Omaha Human Relations Department Letter. The letter included a summary of Coleman's situation and a review of applicable legal principles. The letter concluded that Coleman had been forcibly retired in violation of the ADEA and recommended to the City that he be rehired. The City objected to the letter on relevancy grounds. Coleman argued that the letter was admissible as an official business record and as an admission. The district court sustained the objection, apparently on the ground that the letter was nothing more than a recommendation and thus was not binding on the City. There was no mention made of the letter's relevance to mitigation of damages. At trial Coleman's attorney attempted to question Coleman about the letter. The following exchange took place out of the hearing of the jury:
 
 
 8
 MR. CHRISTIAN [Coleman's attorney]: I think this is important, Your Honor, because Mr. Coleman tells me that if we knew he would retire under the policy of the City of Omaha, Chief Andersen, and--
 
 
 9
 MR. FELLOWS [Omaha's attorney]: Speak quieter, please.
 
 
 10
 THE COURT: Yes, please speak quietly.
 
 
 11
 MR. CHRISTIAN: --the Human Relations Department told him that he should be reinstated. Now, there is going to be a question here as they have raised the issue that my client did not seek any employment, and I want the Court to understand that my client received confusing signals from the City of Omaha. He felt--
 
 
 12
 THE COURT: Oh, I see. This runs to the issue of damages?
 
 
 13
 MR. CHRISTIAN: Right.
 
 
 14
 THE COURT: In other words, he is required by law to mitigate his damages and this apparently runs to the issue of whether he actively sought other employment in mitigation of his damages and it probably would, in fact, be relevant for that purpose, and it would seem to me to be relevant and I would be amenable to instruct the jury at the proper time that it is admissible for that purpose. It is being offered only for that purpose?
 
 
 15
 MR. CHRISTIAN: That is correct.
 
 
 16
 THE COURT: If you will remind me to do so at the proper time, I will give them an instruction that it is admissible and I think it probably--do you disagree that it is?
 
 
 17
 MR. FELLOWS: No. That was the question. I had not given any thought to the idea of personal damages and I am in concurrence with that.
 
 
 18
 THE COURT: All right. Fine.
 
 
 19
 MR. FELLOWS: For that limited purpose.
 
 
 20
 THE COURT: All right.
 
 
 21
 This colloquy makes it clear that a reason not previously considered by the court for the relevance of the letter had been presented and partially accepted by the court. The court allowed limited examination of Coleman on the contents of the letter.[3] However, Coleman's attorney did not again offer the letter itself as an exhibit.
 
 
 22
 Coleman now argues that the district court's initial refusal to admit the letter was error. The court's initial refusal to admit the letter did not take into account its relevance to the mitigation issue because that argument was not presented and the district court cannot be found to have erred by failing to perceive on its own the potential relevance of the evidence. It was Coleman's responsibility to make clear the use to which he would put the evidence. Caisson Corp. v. Ingersoll-Rand Co., 622 F.2d 672, 680-81 (3d Cir.1980); United States v. Anderson, 618 F.2d 487, 491 (8th Cir.1980); Independent Iron Works, Inc. v. United States Steel Corp., 322 F.2d 656, 674 (9th Cir.1963), cert. denied, 375 U.S. 922, 84 S.Ct. 267, 11 L.Ed.2d 165 (1963); see Fed.R.Evid. 103. Further, during Coleman's testimony, the district court allowed examination of Coleman about the letter and upon request might have admitted the letter itself. Coleman made no such request. Again, the court was not responsible for seeing that all of Coleman's evidence was admitted or offered for admission. Coleman's oversight cannot be grounds for a reversal in his favor.[4]
 
 II. The Jury's Question
 
 23
 During its deliberations, the jury submitted the following question:
 
 
 24
 [w]as there evidence submitted that has not been included in the materials given the jury which would indicate any communication from the Human Relations Department which would be in conflict with the denial of an extension [of Coleman's job] beyond the age of 62 ...?
 
 
 25
 The district court conferred with the attorneys and, after determining that the Human Relations Department letter had not been received in evidence, instructed the jury that "there are no additional exhibits which were received in evidence which have not been included in the materials given to the jury. You must rely upon your own memories as to the testimony of the witnesses." Neither party objected to the answer.
 
 
 26
 Coleman now claims that the answer directed the jury to disregard the Human Relations Department letter. First, the issue was not properly preserved for appeal, because Coleman did not object before the district court. Fed.R.Civ.P. 51; see Weber v. Brunswick Corp., 368 F.2d 480, 482 (10th Cir.1966). Further, the district court's response was proper. The letter itself had not been admitted so there was no "other evidence" not submitted to the jury. A specific referral to Coleman's testimony might have placed undue emphasis on that evidence. The answer given was factually correct and neutral. We find no unfair prejudice resulted from the response.
 
 III. Back Pay
 
 27
 Coleman argues that he was entitled to a directed verdict on the issue of back pay.
 
 
 28
 Once unlawful discrimination has been found, back pay should usually be awarded in furtherance of the ADEA's goal to "make whole" persons who suffer loss due to discrimination. Albemarle Paper Co. v. Moody, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975); Gibson v. Mohawk Rubber Co., 695 F.2d 1093, 1095 (8th Cir.1982). The amount, however, must be offset by any earnings the plaintiff received after the discriminatory act, Leftwich v. Harris-Stowe State College, 702 F.2d 686, 693 (8th Cir.1983), or which the plaintiff could have earned through reasonable efforts to seek suitable alternative employment. Fiedler v. Indianhead Truck Line, Inc., 670 F.2d 806, 809 (8th Cir.1982). The burden is on the defendant to prove failure to mitigate damages. Hegler v. Board of Education, 447 F.2d 1078, 1081 (8th Cir.1971). The defendant has to show that the plaintiff failed to use reasonable care and diligence and that there were jobs available which the plaintiff could have discovered and for which the plaintiff was qualified. Id. Coleman testified that he had not sought alternative employment. The City presented evidence that several jobs for which Coleman was qualified were available, including positions as police chief in two small Nebraska towns and a vice-presidency with an Omaha private security firm.
 
 
 29
 The evidence presented on the two police chief positions was inadequate to meet the defendant's burden. Both jobs would have required that Coleman leave Omaha, his home for most of his life. Coleman cannot be required to move from his home "in order to reduce damages caused by the [defendant's] unlawful acts." Id. However, the City did present evidence of a vice-presidency with a local private security firm, which had been filled by a former Omaha police officer, and general testimony of the availability of similar jobs to retired police officers in the Omaha area. Coleman acknowledged on cross-examination that a number of former police officers are now associated with private security agencies, that he would be qualified for such jobs, and that he had not sought employment after his retirement. While not overwhelming, we consider the evidence sufficient to warrant presenting the question to the jury. In addition, we note that Coleman did not move for a directed verdict on the issue of back pay. In the absence of an appropriate motion for a directed verdict, an appellate court is powerless to review the sufficiency of the evidence. Lowry v. Black Hills Agency, Inc., 509 F.2d 1311, 1315 (8th Cir.1975).[5]
 
 IV. Liquidated Damages
 
 30
 Coleman claims that he is entitled to liquidated damages. We disagree. Coleman did not seek liquidated damages in his complaint or during trial. There was no evidence that the City's violation of the ADEA was willful, 29 U.S.C. § 626(b), and no jury instruction on willful violations was requested. We find no error in the district court's refusal to award Coleman liquidated damages. Leftwich v. Harris-Stowe State College, 702 F.2d at 694.V. Expert Fees
 
 
 31
 Coleman included in his Bill of Costs $5,223.64 in expert witness fees. The district court allowed only the statutory minimum of $385, finding that in order to recover more than the statutory minimum, Coleman had to obtain the approval of the court prior to incurring the expense.
 
 
 32
 This court has rejected the prior approval requirement. In Paschall v. Kansas City Star Co., 695 F.2d 322 (8th Cir.1982) (rehearing en banc granted Feb. 1, 1983), this court held that a trial court has discretion to award expert witness fees as part of costs when the expert's testimony was crucial to the issues decided. Id. at 339. The court expressly refused to adopt a prior approval requirement. Id. n. 20; Roberts v. S.S. Kyriakoula D. Lemos, 651 F.2d 201, 207 (3d Cir.1981).
 
 
 33
 In this case the district court did rely in part on the testimony of Coleman's expert witnesses in finding that the City failed to prove that age was a bona fide occupational qualification for deputy police chiefs. However, the district court did not make a finding concerning the necessity or usefulness of that evidence. This is a matter to be determined by the district court based on its familiarity with the case and in the exercise of its reasoned discretion. We therefore believe that a remand is necessary on this limited issue. Roberts v. S.S. Kyriakoula D. Lemos, 651 F.2d at 207; see Paschall v. Kansas City Star Co., 695 F.2d at 338-39.
 
 
 34
 Accordingly, the judgment of the district court is affirmed in part and vacated and remanded in part.
 
 
 
 [1]
 The Honorable C. Arlen Beam, United States District Judge for the District of Nebraska
 
 
 [2]
 The district court rejected the City's bona fide occupational qualification defense. The City does not contest this holding on appeal
 
 
 [3]
 The district court allowed extensive questioning of Coleman on this limited issue. Coleman's allegation of undue restrictions is not supported by the record
 
 
 [4]
 We are unwilling to address the issue whether the district court erred initially in refusing to admit the letter. Whether agency determinations of liability are admissible per se or in the discretion of the court has divided the circuits. See Plummer v. Western Int'l Hotels Co., 656 F.2d 502, 504 (9th Cir.1981); Walton v. Eaton Corp., 563 F.2d 66, 75 (3d Cir.1977); Cox v. Babcock & Wilcox Co., 471 F.2d 13, 15 (4th Cir.1972); Heard v. Mueller Co., 464 F.2d 190, 194 (6th Cir.1972); Smith v. Universal Servs., Inc., 454 F.2d 154 (5th Cir.1972). We have not decided the issue and see no reason to address it here when its relationship to the litigation is so attenuated. Its nonadmittance clearly had no effect on the issue for which it was originally offered--liability--because Coleman received a directed verdict on that issue. Further, Coleman had an opportunity to re-offer the evidence on the mitigation issue and did not do so. In these circumstances we would be unwilling to reverse even if the letter should have been originally admitted
 
 
 [5]
 The City contends that the jury's verdict is also supported by evidence on the amount Coleman received at retirement for accumulated sick leave and vacation time, which "canceled out" in part back pay due him. However, the leave time had been earned and Coleman was entitled to it in addition to his regular salary. Thus the amount Coleman received in compensation for his accumulated leave time could not be deducted from a back pay award. Naton v. Bank of California, 649 F.2d 691, 700 (9th Cir.1981); Laugesen v. Anaconda Co., 510 F.2d 307, 317 (6th Cir.1975)