842 F.2d 1291
 127 L.R.R.M. (BNA) 3200
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
RYDER DRIVER LEASING, INC., Respondent.
 No. 87-2569.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 2, 1987.
Decided March 7, 1988.
 
 Samuel L. Bare, III for respondent.
 Joseph Henry Bornong, National Labor Relations Board (Rosemary M. Collyer, General Counsel; John E. Higgins, Jr., Deputy General Counsel; Robert E. Allen, Associate General Counsel; Elliott Moore, Deputy Associate General Counsel; Barbara A. Atkin, Supervisory Attorney, on brief), for petitioner.
 
 
 1
 Before JAMES DICKSON PHILLIPS and CHAPMAN, Circuit Judges, and TERRENCE WILLIAM BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 
 
 2
 TERRENCE WILLIAM BOYLE, District Judge for Eastern District of North Carolina, Sitting by Designation.
 
 I.
 
 3
 This case is before the court on application of the National Labor Relations Board (NLRB) pursuant to Sec. 10(e) of the National Labor Relations Act (the Act), 29 U.S.C. Sec. 151, 160(e), for enforcement of its December 15, 1986, order against Ryder Driver Leasing, Inc. The NLRB found that Ryder violated Sec. 8(a)(5) and (1) of the Act by refusing to recognize and bargain with the Chauffeurs, Teamsters and Helpers Local Union No. 391. The Union was certified as exclusive bargaining representative for Ryder's employees at its Greensboro, N.C., facility after a representation election.
 
 II.
 
 4
 J.P. Stevens, the textile company, historically employed its own truck drivers. Over time, Stevens successfully resisted Union organization and encouraged employee loyalty through preferred working arrangements for its drivers.
 
 
 5
 Suddenly, in October 1984, Stevens abandoned this benevolent relationship with its drivers. All of the Stevens drivers were laid off. Ryder Leasing was hired in their place to supply trucks and drivers.
 
 
 6
 Although Ryder hired most of Stevens' former drivers, the lease agreement designated Ryder as the sole employer of the drivers and sole negotiator of employment contracts. Ryder set its own work schedules. Working conditions for the drivers with Ryder were hard when compared with conditions that previously existed under Stevens. Benefits were also limited.
 
 
 7
 On February 28, 1985, Union Local 391 filed a representation petition with the NLRB requesting an election for the unit of drivers employed by Ryder and Stevens as joint employers at the Greensboro, North Carolina terminal. The Union and Ryder subsequently agreed that the appropriate bargaining unit should also include drivers at several satellite facilities in North Carolina and Virginia. Ryder and Stevens both objected to the inclusion of Stevens as a joint employer. In a decision issued on April 17, 1985, the NLRB Regional Director held that these drivers were not employed by Stevens and dismissed Stevens from the proceeding.
 
 
 8
 While this was happening, Teamsters Local 28 petitioned to represent another unit of the Ryder's drivers located in Greenville, South Carolina. A similar lease agreement existed between Stevens and Ryder affecting the Greenville facility and its employees. There, the Regional Director held that Ryder and Stevens were joint employers and made both, parties to the representation election. The Union appealed to the full Board asking for a stay of the election pending appeal.
 
 
 9
 Returning to the events in Greensboro, we find that the Regional Director's decision there was well publicized. Ryder posted it on the terminal bulletin board and sent each employee a letter reporting that the NLRB had found Ryder to be the "only employer, and that you do not work for J.P. Stevens."
 
 
 10
 There was an election notice and sample ballot posted at the polls stating that the election was "For Certain Employees of Ryder Driver Leasing, Inc." The Union sent all the Greensboro employees a letter stating that contrary to any rumors concerning the Greenville, South Carolina decision, it intended to negotiate a contract "with whoever the Labor Board decides is the Employer."
 
 
 11
 On May 10, 1985, the Board held an election at the Greenville facility and impounded the ballots. On May 17, the Board held a comparable election at Greensboro and also impounded these ballots. On July 12, 1985, the Board granted the Union's request for review but denied the request for a stay of the elections.
 
 
 12
 Subsequently, Stevens and Ryder requested that the NLRB destroy the impounded ballots and rerun the Greensboro election. However, the NLRB decided that Ryder and Stevens were not joint employers and ordered the impounded ballots tallied. The tally showed that 63 votes favored the Union, 14 votes opposed the Union, and 1 ballot was challenged. Three eligible voters did not participate in the election.
 
 
 13
 Ryder objected, claiming the election was held prematurely and that the employees were confused over the true identity of their employer, thereby depriving employees of a free choice in the election. The Regional Director ruled that the employees were fully informed prior to voting of the true identity of their employer. The Director pointed to the plenary evidence of notice and the clear distinction of the roles of J.P. Stevens and Ryder presented to these employees at the time of the election. Many of the employees had lived and worked through the transition from being Stevens drivers to being Ryder drivers, and there was little doubt that they understood exactly which company was employing them at the time of the election. The Board subsequently denied the Company's request for a review of this supplemental decision.
 
 
 14
 The Union filed a complaint with the NLRB when Ryder refused to bargain. Ryder defends its refusal on the claim that the Union is improperly certified. The Board decided that Ryder's refusal to bargain violated Secs. 8(a)(5) and (1) of the National Labor Relations Act. In so ordering, the Board held that Ryder failed to raise any new or unique issues which had not been before the Board at the time of the initial certification. On these findings, a cease and desist order was entered against Ryder compelling them to bargain in good faith. The Board here seeks enforcement of the order. We allow enforcement.
 
 III.
 
 15
 The National Labor Relations Board has "a wide degree of discretion" entrusted to it by Congress in resolving questions arising during representation proceedings. NLRB v. A.J. Tower Co., 329 U.S. 324, 330 (1946); Aerovox Corp. v. NLRB, 409 F.2d 1004, 1007 (4th Cir.1969). Representation elections are not set aside absent evidence that employees have been precluded from exercising their free choice in an election. Abbott Laboratories v. NLRB, 540 F.2d 662, 667 (4th Cir., cert. denied, 429 U.S. 831 (1976). In NLRB v. Shirlington Supermarket, Inc., 224 F.2d 649, 651 (4th Cir., cert. denied, 350 U.S. 914 (1955), this court said that "whether a representation election has been conducted under conditions compatible with the exercise of free choice by the employees, is a matter which Congress has committed to the discretion of the Board." Representation elections held pursuant to the provisions, regulations and safeguards approved by the Board are presumed to reflect the true desires of the participating employees. NLRB v. Zelrich Co., 344 F.2d 1011, 1015 (5th Cir.1965).
 
 
 16
 The Greensboro election was conducted in conformity with Board regulations. Board regulations provide that the filing of a request for a review does not stay an election. 29 C.F.R. Sec. 102.67(b). This rule further provides that all ballots shall be impounded and remain unopened pending a Board decision. Id. This impound procedure enables the Board to expeditiously conduct elections and avoid delays which could interfere with the employees making a free and informed choice. The Board properly permitted the May 17 Greensboro election to take place pending review of the Regional Director's decision and Ryder's objections.
 
 IV.
 
 17
 Where objections to a representation election are raised, the objecting party carries the burden to show that there has been prejudice to the fairness of the election. NLRB v. Mattison Machine Works, 365 U.S. 123, 124 (1961). The objecting party may not merely make conclusory allegations but must present "specific evidence of specific events from or about specific people." Methodist Home v. NLRB, 569 F.2d 1173, 1178 (4th Cir.1979), quoting Electronic Components Corp. v. NLRB, 546 F.2d 1088, 1091 (4th Cir.1976).
 
 
 18
 Ryder has failed to support its claims of confusion over employer identity with sufficient evidence. All of the circumstantial evidence points in the opposite direction, in support of the Board's decision.
 
 
 19
 The Board properly concluded that Ryder presented no evidence to support its assertion that Union misrepresentations affected the election.
 
 
 20
 In support of its argument, Ryder presented three affidavits from employees. Two of the affidavits stated that the employees believed that "through a legal proceeding," the Union would join Ryder and Stevens as joint employers. No Union statement or any objective circumstance created this belief. This evidence was a mere conclusion or speculation. It is in direct conflict with the uncontroverted evidence that Ryder was the drivers' sole employer and, as such, is entitled to little weight.
 
 
 21
 Moreover, Ryder has made no showing supporting its contention that the employees would have voted otherwise if they knew that Stevens was their prospective employer. As the Supreme Court in NLRB v. Burns International Securities Services, 406 U.S. 272 (1972), noted, a change in employer's identity does not necessarily impact on the employees' desire for representation. Employer identity is important but does not in itself determine a representation election outcome. In all likelihood, the employees would have voted as strongly against Stevens as they did against Ryder. It would seem doubtful that Stevens' recent breach of faith with many of these same employees would have produced a different result if Stevens was the employer.
 
 V.
 
 22
 Ryder fails to support its claim that the employees were deprived of their right to make an informed choice. Its claim is that the employees were confused about the true identity of their employer and that this creates a material defect in the representation election comparable to the defect which occurs when there is employee confusion over their appropriate bargaining unit.
 
 
 23
 Ryder cites several cases where the Board conducted an election while a request for review of the appropriateness of an employee unit was pending. Hamilton Test Systems v. NLRB, 743 F.2d 136 (2nd Cir.1984); NLRB v. Parson's School of Design, 793 F.2d 503 (2nd Cir.1986); and NLRB v. Lorimar Productions, Inc., 771 F.2d 1294 (9th Cir.1985). In each of these cases, the reviewing courts found that subsequent changes in the employee unit's composition and classifications completely changed the issue voted on by the employees on election day. Id.
 
 
 24
 Conversely, here the Board merely affirmed the existing decision of the Regional Director and confirmed Ryder's status as the sole employer of the Greensboro employees.
 
 VI.
 
 25
 Ryder claims that it was error for the Board to deny it an evidentiary hearing on its appeal from the ruling of the Regional Director. Ryder claims that the Regional Director was incorrect in his finding that the election was not tainted by employee confusion over employer identity. The Board is required to hold an evidentiary hearing if a "substantial material issue of fact relating to the validity of the election exists." NLRB v. Bata Shoe Co., 377 F.2d 821, 825 (4th Cir.1967), cert. denied 389 U.S. 917 (1967). Here, the Board found that there was no controverted substantial material issue of fact at the time of Ryder's request for a hearing and we concur.
 
 VII.
 
 26
 For the foregoing reasons, we grant the National Labor Relations Board's application for the enforcement of its order requiring Ryder to bargain with Teamsters Local 391 upon request, to embody any understandings reached in a signed agreement and to post appropriate notices. Furthermore, we grant the Board's order requiring Ryder to cease and desist from refusing to bargain with Teamsters Union Local 391 and from any like or related manner interfering with, restraining or coercing employees in the exercise of their rights granted to them under Sec. 7 of the National Labor Relations Act. 29 U.S.C. Sec. 157. The National Labor Relations Board's order is hereby GRANTED.
 
 
 27
 ENFORCEMENT GRANTED.