**Gary W. RANK, Plaintiff,**

v.

**John C. BALSHY, Dean B. Shipe, the Estate of Joseph VanNort, Defendants.**

**Civ. A. No. 80–0449.**

United States District Court,
M.D. Pennsylvania.

July 5, 1984.

Gilbert B. Abramson, Philadelphia, Pa., for plaintiff.

Francis X. O'Brien, Asst. Atty. Gen., Harrisburg, Pa., for defendants John C. Balshy, Dean B. Shipe, Joseph A. Van Nort, John J. Holtz, and Com. of Pa.

## MEMORANDUM AND OPINION

HERMAN, District Judge.

## I. INTRODUCTION

The above-captioned civil rights action was initiated on April 24, 1980. Prior to trial, certain defendants were dismissed. Following a lengthy trial, a jury returned a verdict of liability against the remaining Defendants:[1] John Balshy, Dean Shipe, and Joseph Van Nort.[2]. The jury awarded $40,500.00 in compensatory damages and $15,000.00 in punitive damages.

The sole issue before us now is Plaintiff's motion for attorney fees and costs. Plaintiff avers that his counsel fees total $119,475.50, which he believes should be multiplied by two for a total of $238,951.00. Plaintiff and his counsel also seek recovery of costs totalling $28,774.11. While Defendants do not contest Plaintiff's general right to recover attorney fees and costs pursuant to 42 U.S.C. § 1988, Defendants strongly contest the reasonableness and the propriety of the fees and various costs.

## II. LEGAL ANALYSIS

In any lawsuit in this country, the "American Rule" has been that each party ordinarily should bear its own counsel fees unless there is express statutory authority to the contrary. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95

---

**1.** The court granted Defendant John Holtz's motion for a directed verdict at the close of the case.

**2.** During the course of the litigation, the Estate of Joseph VanNort was substituted for the then deceased VanNort. For the purpose of this memorandum, the Estate will be referred to as VanNort.

S.Ct. 1612, 44 L.Ed.2d 141 (1975). With federal civil rights actions, such a statute exists, which provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. Although the statute is simply worded, the courts have been inundated with cases seeking to clarify the extent of this statute. As a result, certain principles have emerged.

■ In general, the court must determine the lodestar, or base figure, of the requested attorney fee. This requires an analysis of how many hours were spent by which attorneys in what manner and the value of these services. *Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir.1973) (Lindy I). Accordingly, the courts must make a "twin inquiry into reasonableness: a reasonable hourly rate *and* a determination of whether it was reasonable to expend the number of *hours* in a particular case." *Ursic v. Bethlehem Mines*, 719 F.2d 670, 676 (3d Cir.1983) (emphasis in original). *See also Hensley v. Eckerhart*, 461 U.S. 424, ——, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.").

■ In determining the lodestar, the court may exercise some discretion, but the court must abide by the appropriate standards and articulate its reasons to permit careful appellate review. *Ursic*, 719 F.2d at 675. While balancing numerous concerns, the trial courts have been cautioned not to become so enmeshed with a fee decision that it dwarfs the case in chief. *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 116 (3d Cir.1976) (*en banc*) (Lindy II) ("Once the district court determines the reasonable hourly rates to be applied, ... it need not conduct a minute evaluation of each phase or category of counsel's work.").

Regardless, as statutory fee cases have increased dramatically, the courts have been advised to "cast a critical eye on the award request." *Ursic*, 719 F.2d at 676. In the recent Supreme Court decision of *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Court held that the amount of a fee should be determined on the facts of each case considering numerous factors. Twelve factors the court specifically noted are as follow:

(1) [T]he time and labor required; (2) the the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 1937 n.3; *Ursic*, 719 F.2d at 675 n. 4. The United States Court of Appeals for the Third Circuit also has emphasized various concerns affecting a lodestar determination, including the reputation and status of the attorney and the general quality of a counsel's experience, knowledge, and legal talent. *Lindy I*, 487 F.2d at 167; *Lindy II*, 540 F.2d at 117.

■ Further considerations exist in calculating a lodestar. First, a party must adequately document the hours worked or suffer a reduction in his award request. *Hensley*, 103 S.Ct. at 1939. Moreover, hours that are not *reasonably expended* must be excluded from the lodestar. Overstaffed cases that include excessive, redundant, or otherwise unnecessary billed hours cannot be fully compensated. *Id.* at 1939–40. While duplicative efforts on some matters surely will be helpful to trial counsel, not all such efforts are reasonably necessary and recoverable under the Civil Rights Attorney's Fees Awards Act, 42 U.S.C.

§ 1988. *M.S.R. Imports, Inc. v. R.E. Greenspan Co., Inc.*, 574 F.Supp. 31, 34 (E.D.Pa.1983) (one day assistance of senior co-trial counsel in short, uncomplicated trial excluded from fee award).

As the Supreme Court and the Third Circuit have emphasized, the key word in consideration of a fee petition is "reasonable." *Hensley*, 103 S.Ct. at 1939; *Ursic*, 719 F.2d at 678. "Billing judgment" is an important component in setting a fee. " 'Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.' " *Hensley*, S.Ct. at 1940, *quoting*, *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C.Cir.1980) (en banc) (emphasis in original); *Ursic*, 719 F.2d at 678.

In a well-reasoned and common-sense opinion, Judge Weis further observed the following:

[I]t should be noted that the lodestar computation is a two-edged sword. A fee applicant cannot demand a high hourly rate—which is based on his or her experience, reputation, and a presumed familiarity with the applicable law—and then run up an inordinate amount of time researching the same law. Double dipping, in any form, cannot be condoned. Our cases supply no authority for rewarding non-stop meter running in law offices. *See Prandini I [Prandini v. National Tea Co.*, 557 F.2d 1015 (3d Cir.1977)], at 1020.

Nor do we approve the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates. Routine tasks, if performed by senior partners in large firms, should not be billed at their usual rates. A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn.

*Ursic*, 719 F.2d at 677.

■ Finally, in determining the lodestar, the court must consider the extent to which the prevailing party succeeded on the merits. *Hensley*, 103 S.Ct. at 1940, 1943; *Inmates of Allegheny County Jail v. Pierce*, 716 F.2d 177, 180 (3d Cir.1983) (*modifying*

*Hughes v. Repko*, 578 F.2d 483 (3d Cir. 1978), to the extent that all hours attributed to unsuccessful claims were excluded mechanically from fee award). In *Hensley*, the Court held that:

[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Hensley*, 103 S.Ct. at 1943; *Inmates of Allegheny County Jail*, 716 F.2d at 180.

In addressing this aspect, no precise rule or formula exists. Specific hours may be identified and excluded from the lodestar or the award may be reduced to reflect limited success. *Hensley*, 103 S.Ct. at 1941. Since counsel generally devotes his time to a case as a whole, it may be difficult to separate claims and the hours expended on them. When claims involve a common core of facts and related legal theories, the court should focus on the overall relief obtained in relationship to the reasonable hours expended, keeping the degree of success as the most critical factor. *Id.* at 1940–41. Clearly a mathematical approach of comparing the number of successful claims to the total number of claims raised is improper. *Id.* at 1940–41 n.11; *Inmates of Allegheny County Jail*, 716 F.2d at 181.

■ Upon careful examination of the above factors and considerations, the court can determine a reasonable lodestar figure. The court's task in an attorney fee award, however, is not completed until the court separately addresses whether the lodestar should be increased or decreased due to special circumstances. In *Lindy I* and *Lindy II*, the Third Circuit held that the lode-

star could be augmented, or decreased, upon consideration of the contingency nature of the action and the quality of the work performed. *Lindy I*, 487 F.2d at 168; *Lindy II*, 540 F.2d at 117–18.

■ Any increase or decrease based upon the quality of work is to reflect only *exceptional* services, be it unusually good or unusually poor. *Blum v. Stenson*, —— U.S. ——, ——, 104 S.Ct. 1541, 1547–49, 79 L.Ed.2d 891 (1984); *Ursic*, 719 F.2d at 674; *Lindy II*, 540 F.2d at 118. Since "quality" is a factor in determining the lodestar (*i.e.*, a high hourly rate presumes high quality work), an attorney must demonstrate either service or a result of a superior nature.[3] *Blum*, 104 S.Ct. at 1547–49; *Ursic*, 719 F.2d at 674. If the court decides to use a multiplier to augment the award, the reasons for the court's ruling must be explained.[4] *Blum*, 104 S.Ct. at 1547–50; *Lindy II*, 540 F.2d at 118.

## III. FACTUAL ANALYSIS: ATTORNEY FEES

### A. Case History

To properly understand the issues presented by the petition for attorney fees, it is necessary to examine the underlying basis of this civil action. On March 23, 1979, Helen Horn was found murdered in her home. Following an investigation by the Pennsylvania State Police, Plaintiff, Gary W. Rank, was arrested and charged with her murder. Following a ten-day trial, a jury acquitted Plaintiff.

Approximately one year after the death of Mrs. Horn, Plaintiff filed this civil rights action in April 1980. Plaintiff alleged that four Pennsylvania State Police officers and their employer issued and executed search warrants knowing the alleged facts to be false; obtained an arrest warrant without having probable cause; prevented Plaintiff from seeing his counsel; fabricated, destroyed, or concealed evidence in the criminal murder trial; and assaulted and battered Plaintiff. Plaintiff further averred that the Commonwealth of Pennsylvania had failed to exercise due care in selecting, training, and maintaining control of the state policemen. Additionally, Plaintiff claimed that Dauphin County and the warden of Dauphin County Jail failed to exercise due care in the selection, supervision, and control of county jail personnel.[5]

Following an unopposed motion to dismiss, the court dismissed Defendants Dauphin County and the warden of Dauphin County Jail from the action on June 20, 1980. Thereafter, the individual State Police officers, the Pennsylvania Department of State Police, and the Commonwealth of Pennsylvania moved for dismissal. The individual officers' motions were denied but the court granted the Commonwealth's and State Police Department's motions in a September 23, 1980, order.

Upon the conclusion of discovery, a jury trial commenced on October 13, 1982. The principal issues raised were whether the State Police officers knowingly had insufficient probable cause to obtain the arrest and search warrants and whether the officers had fabricated or planted certain

3. Any increase or decrease due to quality of work " 'is intended to take into account only an unusual degree of skill, superior or inferior, exhibited by counsel in the specific case before the court. The general quality of the attorney's practice and reputation is not to be considered in setting this factor, but enters instead into the determination of the reasonable hourly rate.' " *Blum*, 104 S.Ct. at 1547–49; *Ursic*, 719 F.2d at 674, *quoting Silberman v. Bogle*, 683 F.2d 62, 64 (3d Cir.1982).

4. We note that the purpose of the Civil Rights Attorney's Fees Awards Act is to permit a plaintiff with inadequate financial resources to litigate a matter. A fee award is an incentive for private enforcement of laws and unconstitutional rights; they are not the vehicle for punishment. *Ursic*, 719 F.2d at 677. Accordingly, the concept of punitive sanctions plays no role in considering whether to augment a fee award.

5. These claims presented various federal and state legal theories, including Fourth, Sixth, and Fourteenth amendment violations; violations of 42 U.S.C. § 1983; assault and battery; wrongful arrest and imprisonment; intentional infliction of emotional distress; and defamation.

pieces of evidence. Most of the testimony focused on whether the officers had planted Rank's fingerprints on a cellar windowpane and doorjamb at the crime scene and whether blue fibers allegedly found on a cellar window actually existed. At the close of Plaintiff's case, the court dismissed all pendent state claims and the excessive use of force, the malicious prosecution, and the right to counsel claims. Moreover, at the close of all evidence, the court entered a directed verdict in favor of Defendant Holtz.

On November 5, 1982, the jury returned a verdict on liability in favor of Plaintiff and against officers Balshy, Shipe, and VanNort. Following a trial on damages, the jury awarded $13,500.00 in compensatory damages and $5,000.00 in punitive damages against each Defendant for a total of $40,500.00 in compensatory damages and $15,000.00 in punitive damages. Thereafter, numerous post-trial motions were filed by the parties but were denied by the court on September 29, 1983. No decision on Plaintiff's motion for attorney fees and costs was made at that time pending the submission of further affidavits and briefs.

### B. The Lodestar Calculation

In consideration of Plaintiff's request for attorney fees, we first address the question of the reasonable value of the lodestar. During the four years this case was in litigation, two attorneys acted on Plaintiff's behalf: Gilbert B. Abramson and Philip L. Blackman.[6] A summary of the time allegedly expended by each, in addition to their requested hourly rate, is as follows:

**6.** Two associates also worked on the case for a total of 33 hours, which we will address at a later point.

**7.** In 1982, Mr. Abramson's hourly rate was $150.00 per hour. For time spent in court, however, Mr. Abramson charged $1,300.00 per day. The hours and rates enumerated above reflect this billing method.

Nevertheless, should the court choose to award compensation for court time on an hourly rather than per diem basis, Mr. Abramson alleges that he spent a total of 95 hours in court

GILBERT B. ABRAMSON, ESQUIRE

| | | |
|---|---|---|
| 1980 | 37.2 hours x $120/hour= | $ 4,464.00 |
| 1981 | 23.4 hours x $120/hour= | 2,808.00 |
| 1982 | 232.4 hours x $150/hour (out of court)= | 34,860.00 |
| | 15–1/2 days x $1,300/day (in court)= | 20,150.00[7] |
| 1983 | 10.0 hours x $150/hour= | 1,500.00 |
| | TOTAL—$63,782.00 | |

PHILIP L. BLACKMAN, ESQUIRE

| | | |
|---|---|---|
| 1980 | 12.5 hours x $90/hour= | $ 1,125.00 |
| 1981 | 97.2 hours x $100/hour= | 9,720.00 |
| 1982 | 277.2 hours x $120/hour= | 33,264.00 |
| 1983 | 77.3 hours x $120/hour= | 9,276.00 |
| | TOTAL—$53,385.00 | |

See Abramson Affidavit of Time Expended [hereinafter Abramson's Affidavit], Docket entry 213, Exhibit B.

### 1. Reasonable Number of Hours Expended

In support of the fee petition, Abramson and Blackman aver that they spent nearly 700 hours investigating and researching the underlying issues, interviewing witnesses, conducting discovery, engaging expert witnesses, preparing for trial, conducting a three-week jury trial, and briefing post-trial motions. In response, Defendants have raised a number of points which they believe greatly reduces the lodestar requested by Plaintiff. We will address these points *seriatim*.

First, Defendants properly cite *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), for the proposition that the extent of success is a critical factor in a fee award. Accordingly, work on unsuccessful separate claims cannot be reimbursed while time expended on claims involving a common core of facts or related legal theories may be recoverable. *Id.* at 1940. Defendants argue that any

in 1982. The figures for 1982, based on an *hourly rate only*, thus would be:

| 1982 | 232.4 hours x $150/hour (out of court)= | $34,860.00 |
|---|---|---|
| | 95.0 hours x $150/hour (in court)= | 14,250.00 |
| | SUBTOTAL | $49,110.00 |

The resulting difference between the billing methods (per diem versus hourly rates) is $5,900.00.

time expended by Plaintiff's counsel on dismissed state claims or concerning dismissed Defendants cannot be included in the lodestar.

It is clear that Plaintiff has made no claim for reimbursement for any time spent on motions and appeals concerning the Pennsylvania State Police, the Commonwealth of Pennsylvania, Dauphin County, or the warden of Dauphin County Jail. *See* Abramson Affidavit, ¶¶ 8, 15; Exhibit A. Therefore, this aspect is moot.

As to the pendent state claims that the court dismissed, we note that Plaintiff's counsel did not include time expended on these matters to the extent that such time could be determined. Counsel has alleged, however, that the time expended on state claims which cannot reasonably be distinguished from the action as a whole was insignificant. Moreover, counsel observes that the state claims involved a common core of facts; were based on related legal theories; and affected issues of lack of justification, probable cause, and good faith. *Id.*, ¶ 13. Similarly, counsel argues that the time expended concerning the federal claims of assault and battery, deprivation of the right to assistance of counsel, and malicious prosecution, which claims the court dismissed at the close of Plaintiff's case, was inconsequential but nevertheless relevant in establishing the overall lack of good faith of Defendants. *Id.*, ¶ 16. Therefore, Plaintiff argues that any time expended on pendent or dismissed claims which cannot readily be distinguished from the case as a whole should be compensated.

We agree with Plaintiff's counsel that the time spent on these unsuccessful claims was insignificant to the case in chief. The principal issues raised during the litigation were the basis of the officers' probable cause in arresting Rank and in obtaining search warrants and the question of whether the officers fabricated certain evidence.

The far greater amount of time during the trial addressed these aspects. Additionally, we agree with Plaintiff that the unsuccessful claims cannot be viewed easily as discreet claims which can be identified and excluded on a claim-by-claim basis. Rather, the claims essentially involved a common core of facts or related legal theories that supported Plaintiff's general success on the merits.[8] *See Hensley*, 103 S.Ct. at 1940; *Inmates of Allegheny County Jail v. Pierce*, 716 F.2d 177, 180–81 (3d Cir. 1983) (court must consider interrelatedness of successful and unsuccessful claims in reaching reasonable award).

Defendants further argue that the time expended by Plaintiff's counsel in his case against Defendant Holtz, for whom the court granted a directed verdict, must be excluded from the lodestar. We find, however, that this situation is a particularly apt example of where a plaintiff should prevail on his fee request although he did not prevail against a particular defendant.

In the present case, four State Police officers investigated the murder scene and attempted to determine the murderer. Holtz was an integral part of the investigating team. Even though Holtz eventually was found not liable, it would have been impossible for Plaintiff to proceed in his case against the other three officers without questioning and analyzing Holtz's role in the murder case. It would be totally unreasonable to say that Plaintiff prevailed against three of the four officers and then reduce the fee award by one-fourth since any research and discovery concerning Holtz applied equally to the other three Defendants. *See Hensley*, 103 S.Ct. at 1940–41 n. 11 (rejecting mathematical ratio in determining fee award). Even if Defendants do not seek such a strict ratio deduction, the facts of this case demonstrate that the evidence and issues involv-

---

**8.** Defendants specifically argued that any time spent on the unsuccessful § 1985 claim should be excluded. Defendants' Reply Brief, at 4. First, Abramson did not submit this research time to the court. Affidavit of Time Excluded, ¶¶ 1–3. Moreover, the conspiracy theory

presented at trial was pursuant to 42 U.S.C. § 1983. The court's reading of part of § 1985 in the jury charge previously was found to be harmless error. Memorandum of Court, September 29, 1983, at 10.

ing Holtz were so interrelated and intertwined with the other Defendants that the fee award should not be reduced simply because Plaintiff did not prevail against Holtz. *See generally Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208, 1215 (3d Cir.1978).

■ In contesting the lodestar requested by Plaintiff, Defendants also argue that two attorneys were not necessary to present the case and, therefore, that much of counsel's time was duplicative. Defendants are correct that a reasonable attorney fee does not include duplicative, unnecessary, or unreasonably billed hours. As noted above, the courts do not permit non-stop meter running in statutory fee award cases. *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir.1983).

We are well-familiar with the litigation and the difficult burden of proof Plaintiff carried. Part of the complexity of the case was the necessity to review for possible contradiction hundreds of pages of trial and deposition testimony,[9] including the daily transcript of the civil action. There can be no doubt that the jury's verdict reflected the numerous inconsistencies in Defendants' testimony that Plaintiff's counsel elicited. Due to the critical nature of such testimony to establish that state policemen had knowingly or recklessly acted in disregard of Plaintiff's constitutional rights, we believe it was reasonable for two attorneys to present the case to the jury, although we have some doubt as to whether two partners were necessary.

In simple cases, while perhaps helpful, it is a luxury to have co-counsel during a trial. Where a mass of material exists and the facts and circumstantial evidence evolve throughout the trial,[10] the assistance of counsel is not unreasonable and duplicative. Defendants argue that the present case was no more difficult than a personal injury case and that only one attorney was necessary. We disagree. Even defense counsel admitted in the post-trial briefs that the issues which arose, particularly those involving expert testimony as to the fingerprints, and the defense of four individual defendants severely hindered defense counsel's ability to adequately prepare for trial. *See* Defendants Brief in Support of Post-Trial Motions, at 22; Defendant's Reply Brief in Support of Post-Trial Motions, at 6. If defense counsel found the task oppressive as sole counsel, we fail to see how Plaintiff can be criticized for the use of two counsel to present a thorough and cohesive case.

Although we find the use of co-counsel *during the trial* not to be duplicative or unreasonable, we do question the necessity of both attorneys preparing and reviewing various motions and attending pretrial conferences. Upon a thorough review of Exhibit A of Abramson's Affidavit, which specifically enumerates the time spent by each counsel on each aspect of the case, we notice that Blackman did much of the groundwork in researching the law and preparing for and conducting depositions. Regardless, both Abramson and Blackman attended pretrial conferences in Harrisburg. While we do not intend to suggest that either counsel's attendance was more necessary than the other's, we do believe this resulted in an unnecessary duplication of effort. Therefore, we will not include the time expended by Blackman in attending the September 9, 1981, and the September 13, 1982, pretrial conferences and jury selection in the lodestar calculation.[11]

---

9. Indeed, counsel averred that approximately 2,500 pages of testimony had to be reviewed to discover inconsistencies and circumstantial evidence. Abramson's Affidavit, ¶ 6. Defense counsel has not contested the accuracy of this statement and we find it credible.

10. In addition to the overwhelming amount of prior statements to be reviewed, on the sixth day of trial Plaintiff's counsel discovered that the experts had just concluded that Plaintiff's fingerprints had been planted at the murder scene. Accordingly, the court recessed for Defendants to prepare for cross-examination of Plaintiff's experts and to obtain their own expert in the field.

11. The time excluded is 6.2 hours and 8.5 hours for a total of 14.7 hours.

Additionally, we find the review of *certain* defense motions by Plaintiff's counsel and their research of the issues to be duplicative and excessive. First, Abramson spent 1.6 hours reviewing a four-page letter on March 14, 1980; we will deduct one hour from this claim.

Secondly, on July 25, 1980, Abramson spent 5.2 hours reviewing the officer's brief in support of their motion to dismiss. Blackman then expended 7.6 hours researching the issue and Abramson spent an additional 5.8 hours preparing Plaintiff's opposition brief. Since Defendants' brief was only ten pages in length, we do not see how Abramson reasonably could spent 5.2 hours reviewing the brief. If he was researching the cases, then his time was duplicative of Blackman's researching efforts. Accordingly, we will deduct the 5.2 hours of Abramson from the lodestar.

Other expenditures of time that we do not find reasonable for the task performed are as follow. On August 3, 1980, Abramson spent 2.4 hours reviewing the court's July 31, 1980, memorandum and order and reviewing the cases cited therein. This is excessive and will be reduced to .5 hours. Abramson also spent 1.2 hours on August 4, 1980, preparing a simply-worded, two-page motion for leave to file additional exhibits in regard to the motion to dismiss. This will be reduced to .5 hours. On September 5, 1980, Abramson spent a total of 3.4 hours reviewing certain answers and briefs of Defendants'; this will be reduced to 2.0 hours. On September 29, 1980, Abramson spent 2.2 hours reviewing a September 23, 1980, ten-page memorandum and order of court; this will be reduced to .5 hours.

In preparation of the pretrial conference in September 1981, Abramson spent 6.9 hours reviewing his file on September 1, 1981, and 5.3 hours on September 2, 1981, preparing his nine-page pretrial memorandum. He then expended another 4.8 hours in again reviewing the file for the September 9, 1981, conference. We will reduce this time expenditure by 5.0 hours. On February 16, 1983, an associate of Abramson's firm, Dennis Valenza, spent 2.0 hours preparing a simple three-page motion for an extension of time. This will be reduced to .5 hours.

Next, we address the time expended on the fee petition. *See generally Danny Kresky Enterprises Corp. v. Magid*, 716 F.2d 215, 219 (3d Cir.1983) (court reinstated request to recover award for 23.9 hours expended on a fee petition). In general, we found the quality of Plaintiff's motion and supporting briefs and affidavits to be thorough. Nevertheless, between Abramson and Blackman, the two counsel spent 39.7 hours between October 17 and October 20, 1983, preparing *supplemental* affidavits and briefs. These hours were in addition to the initial post-trial motions, which included an extensive motion and argument for counsel fees and costs. While we are aware that it was the court who directed the parties to file additional affidavits and briefs in support of their fee request, we think the expenditure of an additional 39.7 hours by counsel is excessive. Therefore, we will reduce Abramson's claim to 3.0 hours and Blackman's claim to 15.0 hours.

■ In adjusting the lodestar figure, Defendants have asserted that, while it is within the court's discretion to compensate an attorney for travel time, the compensation should not be at professional rates. *Furtado v. Bishop*, 635 F.2d 915, 922 (1st Cir.1980). In this circuit, it is clear that out-of-town counsel may be compensated for travel time. *Danny Kresky Enterprises Corp.*, 716 F.2d at 217–218. To our knowledge, however, the circuit has not addressed the question of whether counsel should be compensated at a lesser rate.

Defendants raise a valid point that if counsel are not performing the legal tasks that justify their high hourly rate, their compensation should be reduced accordingly. Conversely, an attorney may be precluded from performing other legal work while he is traveling and he should not be penalized for this. As a point of reference, a court may reduce an attorney's hourly rate for work that is deemed ministerial or

for nontrial work. *Danny Kresky Enter-prises Corp.*, at 219.

In light of these considerations, we do not believe an attorney should be compensated at his regular hourly rate for travel time. We believe a reduction by 25 percent realistically reflects the manner in which counsel's time is spent as weighed against the other legal work he is prevented from performing.

We have exhaustively reviewed the attorneys' affidavits concerning the time expended throughout this litigation and have compared the claims against the quality of the work performed. Other than the times noted above, we find the remaining averments of time expended to be reasonable. The time expended for trial preparation, without doubt, greatly contributed to Plaintiff's success on the merits. This case, more so than the typical personal injury case, rested heavily on prior testimony and contradictions, which could not have been elicited and deftly presented to the jury without extensive and comprehensive daily preparation. While many factors contribute to the success of a trial practitioner, it is commonly known that preparation is the keystone to that success. *See, e.g., Danny Kresky Enterprises Corp.*, at 218 ("'a good rule of thumb to apply in litigation is that three days of preparation are necessary for every one day in court.'")

Additionally, we find the time expended to be reasonable in light of other considerations. The questions presented by Plaintiff were difficult to prove. Plaintiff had the burden of proving that three Pennsylvania State Police officers knowingly had no probable cause in obtaining search and arrest warrants and wilfully fabricated or concealed evidence crucial to a murder trial. Regardless of the circumstances, these are never easy facts to establish. It is also not a desirable case to represent. Further-more, while the attorneys prepared and tried this case, they were precluded from employment in other cases. Moreover, counsel worked with Plaintiff for over two years to prepare and try the case. The finding of liability against Defendants also was significant in comparison to the seriousness of the accusations. A recovery of $40,500.00 in compensatory damages and $15,000.00 in punitive damages further reflects the important nature of the claims and the results obtained. *See Hensley*, 103 S.Ct. at 1937 n. 3.

In summary, we find the following hours to have been reasonably expended by Abramson and Blackman during the course of this litigation:

GILBERT B. ABRAMSON, ESQUIRE

| | Legal Work | Travel Time |
|---|---|---|
| 1980 | 25.1 hours | – |
| 1981 | 13.4 hours | 5.0 hours |
| 1982 | 201.9 hours plus (15–1/2 days or 95 hours) [12] | 30.5 hours |
| 1983 | 5.8 hours | – |

PHILIP L. BLACKMAN, ESQUIRE

| | Legal Work | Travel Time |
|---|---|---|
| 1980 | 12.5 hours | – |
| 1981 | 66.0 hours | 25.0 hours |
| 1982 | 250.7 hours | 18.0 hours |
| 1983 | 59.8 hours | – |

Moreover, we find the hours spent by the associates of Abramson's firm in furtherance of this litigation, other than 1.5 hours of Valenza's time (*see* text at 20 *supra*) to have been reasonably expended.[13]

### 2. The Reasonable Value of the Services Performed

Having determined the *hours* reasonably expended by Plaintiff's counsel, we must now determine the reasonable *value* of the attorney's services. An attorney's normal billing rate is the logical place to start to value an attorney's services, considering the attorney's reputation and status and the individual circumstances of the

**12.** As noted in footnote 8, Abramson billed at a per diem rate for time spent in court. Should the court reject this billing rate, then the time spent by Abramson in court is 95.0 hours. We will address which billing method will be applied when considering Abramson's reasonable hourly rate.

**13.** The following summary enumerates the time worked by the associates:

| Carol J. Young, Esquire | 1980: | 11.1 hours |
|---|---|---|
| Dennis J. Valenza, Esquire | 1982: | 13.8 hours |
| | 1983: | 6.6 hours |

litigation. *M.S.R. Imports, Inc. v. Greenspan Co., Inc.,* 574 F.Supp. 31, 35 (E.D.Pa. 1983).

Considering Abramson's services first, he alleges that his normal billing rates are as follow:

| | |
|---|---|
| 1980: | $ 120.00 per hour |
| 1981: | $ 120.00 per hour |
| 1982: | $ 150.00 per hour |
| | $1,300.00 per trial day |
| 1983: | $ 150.00 per hour |

Abramson has been practicing since 1968 and became a partner in a firm in 1972. In 1977, he started his own practice. During this period, he has practiced before numerous courts, trying a large number of criminal and civil cases.

 Defendants contend that since Abramson apparently has not tried a civil rights case before (which is not clear to this court), his usual hourly rate should be reduced. If this was an antitrust case, we might agree with Defendants. The present case, however, required extensive knowledge of criminal trials and police investigations, in which area Abramson appears to have extensive background and experience.

The hourly rates charged by Abramson during the period in question, although on the high side, are within the customary rates of similarly experienced attorneys in Philadelphia. The factual issues Abramson had to present were complex and difficult: it is not easy to establish wrongful conduct on the part of a State Police officer. Abramson consistently had to question hostile and evasive witnesses and present complex expert testimony. Abramson's skill was of a quality higher than that usually seen in federal court and it reflected his thorough preparation. His experience and ability, considering the nature of the case and the length of the action, demonstrate that Abramson's customary hourly rates accurately represent the value of the services he performed in this case.

We do decline, however, to use a per diem basis in valuing Abramson's in court services. In 1982, Abramson customarily billed $1,300.00 per courtroom day. This did not include morning or evening preparation. While we are sure other courts may sit for lengthy periods of time, such was not the case during this litigation. If one *includes* the lunch period, the average courtroom day was 6 hours. At $1,300.00 per day, that would create a rate of about $215.00 per hour, which we find excessive. Since Abramson's 1982 hourly rate of $150.00 reflects his skill and abilities both in and out of court, we will compensate his time only on an hourly basis.

As to Blackman, he began practice in 1976. He worked for two firms before he became an associate of Abramson's firm in 1980. In 1981, he became a partner of the firm. During this time, he has had a great deal of experience before many courts, trying or assisting in over fifteen civil and criminal jury trials. His customary billing rates, which are within the customary rates in Philadelphia, have been as follow:

| | |
|---|---|
| 1980: | $ 90.00 per hour |
| 1981: | $100.00 per hour |
| 1982: | $120.00 per hour |
| 1983: | $120.00 per hour |

In consideration of the factors previously mentioned, including those enumerated in the text at 4 *supra,* we find these rates to be rather high. In 1980 and 1981, Blackman had only four and five years of experience respectively.[14] Accordingly, we will reduce the hourly fee by $10.00. Although Blackman was of great assistance to Abramson during the course of the trial, we also believe the 1982 hourly charge of $120.00 is unreasonable and we will reduce it by $10.00.

Considering Blackman's experience, the quality of his work, the nature of the case, the customary rate in the area, *and* the existence of experienced senior counsel, we find the reasonable value of Blackman's services to be as follows:

| | |
|---|---|
| 1980: | $ 80 per hour |
| 1981: | $ 90 per hour |
| 1982: | $100 per hour |
| 1983: | $100 per hour |

---

**14.** In 1980 and 1981, Abramson had twelve and thirteen years of experience respectively. Yet Abramson's and Blackman's customary rate only varied by $30 per hour in 1980 and $20 per hour in 1981.

Finally, we observe that neither Carol Young or Dennis Valenza, associates at the firm, submitted affidavits to justify their hourly rates. In light of the work performed by them, we find the following rates to be reasonable:

| | |
|---|---|
| Carol Young: | 1980 – $50 per hour |
| Dennis Valenza: | 1982 – $65 per hour |
| | 1983 – $65 per hour |

Having determined the reasonable number of hours expended by the counsel and the reasonable value of their services, we conclude that the reasonable lodestar in this case is $96,814.75. The following table demonstrates our calculations:

GILBERT B. ABRAMSON, ESQUIRE
Legal Work:
| | | |
|---|---|---|
| 1980 | 25.1 hours x $120/hour= | $ 3,012.00 |
| 1981 | 13.4 hours x $120/hour= | 1,608.00 |
| 1982 | 296.9 hours (201.9+95.0) x $150/hour= | 44,535.00 |
| 1983 | 5.8 hours x $150/hour= | 870.00 |

Travel Time:
| | | |
|---|---|---|
| 1981 | 5.0 hours x $90/hour (75% of $120)= | 450.00 |
| 1982 | 30.5 hours x $112.50/hour (75% of $150)= | 3,431.25 |
| | SUBTOTAL= | $53,906.25 |

PHILIP L. BLACKMAN
Legal Work:
| | | |
|---|---|---|
| 1980 | 12.5 hours x $80/hour= | $ 1,000.00 |
| 1981 | 66.0 hours x $90/hour= | 5,940.00 |
| 1982 | 250.7 hours x $100/hour= | 25,070.00 |
| 1983 | 59.8 hours x $100/hour= | 5,980.00 |

Travel Time:
| | | |
|---|---|---|
| 1981 | 25.0 hours x $67.50/hour (75% of $90)= | 1,687.50 |
| 1982 | 18.0 hours x $75/hour (75% of $100)= | 1,350.00 |
| | SUBTOTAL= | $41,027.50 |

DENNIS J. VALENZA, ESQUIRE
| | | |
|---|---|---|
| 1982 | 13.8 hours x $65/hour= | $ 897.00 |
| 1983 | 6.6 hours x $65/hour= | 429.00 |
| | SUBTOTAL= | $ 1,326.00 |

CAROL J. YOUNG, ESQUIRE
| | | |
|---|---|---|
| 1980 | 11.1 hours x $50/hour= | $ 555.00 |

TOTAL FOR ALL ATTORNEYS: $96,814.75

### C. The Issue of Augmentation

In the fee petition, Plaintiff has argued that a number of factors justify increasing the lodestar by a multiplier of two. Plaintiff offers the following reasons for doubling the award: 1) Two lawyers spent nearly 700 hours on the case, of which fifteen and one-half days were in trial over a five week period; 2) it was a novel and difficult task, requiring great skill to extract information from recalcitrant defense witnesses to prove fingerprint evidence was planted at a crime scene; 3) two attorneys in a four-person firm were precluded from other employment while working on the case; 4) the attorneys' fee was on a contingency basis with counsel advancing $14,000.00 in costs; 5) the case was one of the three most difficult cases tried by counsel since the proof was virtually in the hands of Defendants and since the material to be reviewed was voluminous; and 6) the case was undesirable because Philadelphia counsel came into the home territory of three state policemen and accused them of serious misconduct and because the criminal trial judge publicly maintained that he believed Plaintiff was guilty of murder regardless of his acquittal. Abramson's Affidavit, ¶ 18.

The law is clear that the lodestar may be increased or decreased to reflect exceptional services and quality, whether it be unusually good or unusually poor. *Blum v. Stenson,* —— U.S. ——, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Ursic,* 719 F.2d at 674; *Lindy II,* 540 F.2d at 118. In recent decisions of the Supreme Court and the Court of Appeals for the Third Circuit, however, the emphasis has been that "an upward adjustment [is justified] *only in the rare case* where the fee applicant offers specific evidence to show that the quality of services rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.'" *Blum,* 104 S.Ct. at 1547–49 (emphasis added); *Ursic,* 719 F.2d at 674. Novelty and complexity of the issues, special skill and experience of the counsel, quality of representation, and results obtained are all factors that affect the lodestar calculation and are not proper considerations in increasing an award. *Blum,* 104 S.Ct. at 1547–50. *See also Ursic,* 719 F.2d at 764 (a high hourly rate reflects high quality work; to augment an award the service or result must be exceptional).

In the present case, we do not find any exceptional circumstances that justify an increase in the lodestar. The attorneys' high hourly rates already reflect the high quality of the work performed, the skill

and experience of each counsel, the difficulty and complexity of the case, and the results obtained. The number of hours expended by counsel further reflect these considerations, in addition to other factors. While counsel may have been precluded from other employment while handling the present action, they are being well compensated for their efforts. Similarly, the contingent fee aspect has been considered and included in determining counsels' reasonable rates. Plaintiff prevailed on significant issues in this case and we do not make light of his attorneys' efforts and skill. Nevertheless, we find the circumstances of this case do not warrant any upward adjustment of the lodestar.

### D. Remaining Issues re Attorney Fee Award

A few issues yet remain as to the award of attorney fees. First, *Sullivan v. Crown Paper Board Co., Inc.*, 719 F.2d 667 (3d Cir.1983), requires the court to determine whether "dual recovery" of attorney fees should be permitted when the attorney and client have a private contingent fee agreement. The standard view in our circuit is to pay the statutory fee to plaintiff's counsel and consider any lesser contingency fee satisfied. An attorney should recover both the statutory fee and the contingency fee (dual recovery) "only 'when the claim involves civil rights of broad significance, prosecuted on behalf of a large class, and the prospective monetary award ... [is] modest in relation to the time, effort and skill required of counsel....'" *Sullivan*, 719 F.2d at 670, *quoting, Zarcone v. Perry*, 581 F.2d 1039, 1044 (2d Cir.1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979).

We find the facts of this case do not satisfy this standard and dual recovery will not be granted. The present case involved a single plaintiff with the significance of the decision limited to the parties and not to a class. While the proving of the factual issues was difficult, the legal issues were not complicated. To permit dual recovery here would grant Plaintiff's

counsel a windfall. Additionally, the purpose of § 1988 is satisfied by having Defendants pay Plaintiff's attorney fees and permitting Plaintiff to retain his full award on damages.

On another point, Defendants imply in their brief that the attorney's fee award should be decreased because the damages awarded Plaintiff were much lower than he was seeking. The relationship between the fee award and results obtained, was previously considered in calculating the lodestar. While the Third Circuit has indicated that this factor may be considered twice in determining the lodestar *and* any fee increase or decrease, *Ursic*, 719 F.2d at 677, this holding was made without benefit of the Supreme Court's decision in *Blum v. Stenson*, — U.S. —, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

Regardless of whether the Third Circuit's decision remains valid, we believe that the fee award in this case should not be decreased because the damages award was less than the damages sought. A verdict of $40,500.00 in compensatory damages and $15,000.00 in punitive damages is not insignificant. *See, e.g., Metcalf v. Borba*, 681 F.2d 1183 (9th Cir.1982) ($21,541.50 attorney's fee awarded where $25,000.00 in damages); *Aumiller v. University of Delaware*, 455 F.Supp. 676 (Del.1978) ($62,842.00 attorney's fee awarded where $27,454.00 in damages).

Finally, Plaintiff requests the court to order the fee award paid from the treasury of the Commonwealth of Pennsylvania since Defendants were liable in their individual and official capacities. Plaintiff correctly observes that the Eleventh Amendment does not bar an award of attorney fees against a state or local government under 42 U.S.C. § 1988. *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Shadis v. Beal*, 685 F.2d 824 (3d Cir.1980). Defense counsel counters, however, that *Hutto* and *Shadis* were social reform cases against high level state officials for state-wide policy changes. Counsel argues that to compel

Pennsylvania to pay the attorney fees incurred by three non-management state policemen would be inequitable. We agree.

Without doubt, in certain cases a § 1988 attorney's fee award against a state *may* be appropriate and *may* be ordered. Under the facts in this case, we will not direct Pennsylvania to pay Plaintiff's counsel fees. If Pennsylvania or any agency or group desires to provide these funds for Defendants, that is a matter between Defendants and any such group.

## IV. COSTS

We next turn to Plaintiff's and his counsel's request for costs. In summary, Abramson seeks reimbursement for $14,305.53 in costs expended by his firm in connection with this case. Plaintiff seeks reimbursement for additional costs totalling $13,850.58. Defendants contend that due to the limited success obtained by Plaintiff, Plaintiff and his attorneys should bear their own costs.[15] In the alternative, Defendants argue that only those costs recoverable under 28 U.S.C. § 1920 can be reimbursed. Because the costs fall within certain categories, we will address each category separately.

### A. Expert Fees

Plaintiff seeks reimbursement for $18,750 in expert fees, in addition to the experts' transportation, food, and lodging expenses. Defendants vigorously protest this cost, perhaps due to the sizeable figure. Defendants claim that the court may tax only the standard witness fee, presently $30.00 per day (28 U.S.C. § 1821(b)), for expert witnesses. Defense counsel cites *Walker v. Robbins Hose Co. No. 1, Inc.*, 622 F.2d 692 (3d Cir.1980), for the proposition that expert witness fees in excess of the standard witness fee are not recoverable as costs.

First, the *Walker* court did not make such a finding. To the contrary, the court specifically refused to decide whether ex-

pert fees were recoverable costs under 42 U.S.C. § 1988. *Id.* at 694. Secondly, and more importantly, in 1981 the Third Circuit reconsidered the *Walker* decision and held that *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964), "affords a district court the equitable discretion to award expert fees when the expert's testimony is indispensable to determination of the case." *Roberts v. S.S. Kyriakoula D. Lemos*, 651 F.2d 201, 206 (3d Cir.1981).

Thus, it is within the court's discretion to award expert fees when the expert's testimony plays a crucial role in the resolution of the issues. *Id.; Commonwealth of Pennsylvania v. O'Neill*, 431 F.Supp. 700, 713 (E.D.Pa.1977), *aff'd mem.*, 573 F.2d 1301 (3d Cir.1978) (expert fees awarded as costs where expert testimony helpful to court and played important role in resolution of issues). Indeed, in civil rights actions, an award of expert fees helps effectuate Congress' intent to encourage private enforcement of civil right laws. *Roberts*, 651 F.2d at 205. Expert testimony is a vital ingredient in the proper presentation and decision of many cases and thus should be compensated. *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir.1981). *See also Paschall v. Kansas City Star Co.*, 695 F.2d 322, 339 (8th Cir.1982) (the expense of expert research and testimony necessary to the litigation may be legitimate and indispensible taxable costs); *Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir.1983) (expert witness fees recoverable under § 1988).

Using our reasonable discretion, we find that many of the expert fees expended by Plaintiff and his counsel are recoverable. Vincent Scalice and Salvatore Nicosia, fingerprint experts, were well qualified and highly skilled. Their testimony concerning Rank's fingerprints found at the murder scene played a crucial role in determination of the issues and was very helpful to the court and the jury. Both

---

15. Defendants have not offered a single case, nor even a single argument, that justifies this proposition. We find the contention to be without merit and we will reject it without further discussion.

Scalice and Nicosia were present a number of days because the issue of planted prints and police procedure was addressed extensively by the parties over a lengthy period. Moreover, there was no duplication of testimony by permitting two experts to testify on behalf of Plaintiff in light of the serious nature of the issue. Accordingly, their fees will be awarded as costs.

Similarly, we believe the testimony of Andrew Venzilli, an economist, was helpful to the jury in determining damages. We will permit recovery of his fee.

▇ Plaintiff also seeks to recover costs in regard to Fred D. Santucci, a forensic photographer. Santucci was a potential rebuttal witness but was not called by Plaintiff. Plaintiff has not explained how Santucci was helpful in the present case. Because exceptions to statutory costs are to be reviewed strictly and because we cannot find that Santucci's assistance to Plaintiff's counsel was helpful to the court or to the resolution of the issues, we will not permit recovery of these expenses.

Accordingly we will award the following experts fees as costs to be paid by Defendants:

| Vincent Scalice | | |
|---|---|---|
| 10/12/82 | | $ 1,000.00 |
| 10/15/82 | | 1,000.00 |
| 10/22/82 | | 3,200.00 |
| 10/24/82 through 11/3/82 | | 8,450.00 |
| | Subtotal = | $13,650.00 |
| Salvatore Nicosia | | |
| Services: | Subtotal = | $ 2,500.00 [16] |
| Andrew J. Verzilli | | |
| Services: | Subtotal = | $ 400.00 |
| | TOTAL = | $16,550.00 |

### B. Statutory and Other Costs

The costs enumerated in 28 U.S.C. § 1920 are clearly costs permissibly taxed under 42 U.S.C. § 1988. These costs, as appropriate here, are as follow:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;

28 U.S.C. § 1920. Moreover, deposition, shipping, telephone, and photocopying costs are taxable under § 1988 if they were reasonable and necessary to the litigation. *Danny Kresky Enterprises Corp. v. Magid*, 716 F.2d 215, 219–220 (3d Cir.1983).

▇ In their opposing briefs, Defendants essentially argue against allowing two particular costs. First, Defendants believe that Plaintiff's counsel should not recover the costs of transcripts of depositions that were taken by Defendants and that were filed with the court in late 1981. Regardless of who took the depositions, we find the expense of the copies of the transcripts recoverable and reasonable. Secondly, Defendants contest recovery of the expense of daily trial transcripts. Since many witnesses consistently were changing or "explaining" their prior testimony, even daily, we find daily transcripts were necessary in this case.

In light of the above, we will tax the following additional costs against Defendants:

| 3/7/80 | Photocopying | $ 18.00 |
|---|---|---|
| 4/24/80 | Filing fee | 60.00 |
| 6/2/80 | Service of complaint | 26.40 |
| 11/20/80 | Deposit-transcript | 400.00 |
| 3/19/80 | Service of subpoenas | 15.00 |
| 4/24/80 | Subpoena fee | 15.00 |
| 4/24/80 | Subpoena fee | 15.00 |
| 5/21/80 | Depositions | 311.35 |
| 5/21/80 | Depositions | 332.80 |
| 5/21/80 | Deposition | 162.95 |
| 5/21/80 | Deposition | 45.24 |
| 6/30/80 | Deposition | 69.01 |
| 3/2/82 | Criminal trial transcript | 62.50 |
| 3/2/82 | Deposition | 67.77 |
| 7/14/82 | Register of Wills fee | 15.00 |
| 10/25/82 | Trial transcript | 850.90 |
| 10/25/82 | Trial transcript | 285.00 |
| 11/3/82 | Photocopies | 9.00 |
| 11/3/82 | Photocopies | 6.00 |

---

**16.** We question Plaintiff's failure to provide any itemization of the time expended by Nicosia. Nevertheless, we will not penalize Plaintiff for his lack of detail on this point since Defendants have not questioned the accuracy of this claim.

| | | |
|---|---|---|
| 11/9/82 | Trial transcript | 569.85 |
| 11/9/82 | Photocopies | 25.00 |
| 11/12/82 | Exhibits | 38.65 |
| 11/12/82 | Subpoena services | 373.20 |
| 2/3/83 | Trial transcript | 1,096.00 |
| 5/5/83 | Trial transcript | 522.00 |
| | TOTAL = | $5,391.62 |

## C. Traveling Expenses

■ Finally, Plaintiff and his counsel seek reimbursement for the traveling expenses of the experts and of Plaintiff's attorneys. Defendants cite *Wahl v. Carrier Mfg. Co., Inc.,* 511 F.2d 209, 217 (7th Cir.1975), for the proposition that expenses incurred by an attorney in attending trial are not recoverable as costs. In *Wahl,* however, the court was not addressing a petition for costs in a civil rights action.

When a statute shifts the typical burden of attorney fees and costs, the traditional limitations of 28 U.S.C. § 1920 do not necessarily apply, particularly in civil rights cases. *Dowdell v. City of Apopka, Florida,* 698 F.2d 1181, 1188–89 (11th Cir.1983). To determine what expenses are properly chargeable in a civil rights case, one must examine the purpose of 42 U.S.C. § 1988, which "is to ensure effective enforcement of the civil rights laws, by making it financially feasible to litigate civil rights violations. *Id.* at 1189; *Palmigiano v. Garrahy,* 707 F.2d 636 (1st Cir.1983). Fees and expenses are often intertwined as vital components of the costs of litigation. "The factually complex and protracted nature of civil rights litigation frequently makes it necessary to make sizeable out-of-pocket expenditures which may be as essential to success as the intellectual skills of the attorneys." *Dowdell,* 698 F.2d at 1190.

Accordingly, we believe transportation, lodging, parking, and food expenses properly may be taxed as costs pursuant to § 1988 to the extent that such expenses were reasonably and necessarily incurred. *Palmigiano,* 707 F.2d 636; *Dowdell,* 698 F.2d at 1192; *Northcross v. Board of Education of Memphis City Schools,* 611 F.2d 624, 639–40 (6th Cir.1979). In light of our prior consideration of expert fees, thus, we find the expenses of the experts to have been necessarily incurred. We also find

the amounts reasonable and will award the following expenses as costs:

| Vincent Scalice | | |
|---|---|---|
| Airplane ticket | | $ 69.00 |
| Lodging | | 436.58 |
| Food | | 25.00 |
| Travel | | 130.00 |
| | Subtotal = | $660.58 |
| **Salvatore Nicosia** | | |
| Lodging | | $ 80.95 |
| Gasoline | | 84.00 |
| Parking | | 4.00 |
| | Subtotal = | $168.95 |
| | TOTAL = | $829.53 |

Similarly, we find that Plaintiff's attorneys should be reimbursed for their traveling expenses. A review of the expenses sought by the attorneys, however, leads us to conclude that some of the claims were unnecessary and unreasonable. For example, Abramson's affidavit as to costs reveals generalized "accommodations" claims for himself, Blackman and *"auxiliary staff."* We have no idea what tasks this auxiliary staff performed. Regardless, such expenses cannot be said to be necessary and will not be reimbursed. Additionally, accommodation expenses are noted for Dennis Valenza, an associate with Abramson's firm. Since counsel offered no reason to justify the necessity of Valenza's overnight presence in Harrisburg, other than for one night when he attended trial the next day, and since we can think of none, we will not permit this cost to be taxed against Defendants. Nor do we expect Defendants to reimburse the accommodation expenses of Santucci, an expert that did not testify, or of Verzilli, an expert who testified for less than a day.

At this point, we face a frustrating aspect in the award of costs. In their accommodations claims, counsel never enumerated what people had what expenses, for what amounts, and for what days. All that is before us are lump claims and one-half of an inch of photocopied receipts without any index or explanations. This court has had to waste a vast amount of time going through pages of receipts to attempt to determine who spent what.

An additional problem is the fact that no one identified which individuals incurred what turnpike, gasoline, and food expenses.

**804**

Since we will not permit accommodation expenses of any auxiliary staff and others, we similarly will not permit traveling and food expenses for such individuals. Nevertheless, we are at a loss in determining the exact amounts due to the lack of specificity by counsel.

It was Plaintiff's and his counsel's burden to justify the necessity and reasonableness of their costs, which burden we find has not been satisfied. Therefore, having interpreted the receipts to the best of our ability, we will award the following amounts as reasonable costs pursuant to our exercise of discretion:

| | |
|---|---|
| Abramson's and Blackman's hotel accommodations for Oct. 12, 13, 14, 1982 ($30.50 x 3) = | $ 91.50 |
| Abramson's accommodations for Oct. 18, 19, 20, 21, 1982 ($38.50 x 4)= | 154.00 |
| Abramson's accommodations for Oct. 24, 25, 26, 27, 31, 1982 and Nov. 1, 2, 3, 4, 1982 ($30.50 x 9)= | 274.50 |
| Abramson's accommodations for Nov. 8 and 9, 1982 ($30.50 x 2)= | 61.00 |
| Blackman's accommodations for Oct. 18, 19, 20, 21, 1982 ($38.50 x 4)= | 154.00 |
| Blackman's accommodations for Oct. 24, 25, 26, 27, 1982 ($30.50 x 4)= | 122.00 |
| Valenza's accommodations for Nov. 2, 1982 ($30.50 x 1)= | 30.50 |
| Subtotal= | $887.50 |
| Plus 6% Sales Tax = | 53.25 |
| Parking = | $ 79.50 |
| Turnpike tolls= | 10.00 |
| Gasoline= | 50.00 |
| Telephone= | 50.00 [17] |
| Food= | 500.00 |
| Subtotal= | $689.50 |
| TOTAL = | $1,630.25 |

The total award of costs, therefore, is as follows:

| | |
|---|---|
| Expert fees | $16,550.00 |
| Expert traveling costs | 829.53 |
| Statutory and other costs | 5,391.62 |
| Attorneys' traveling costs | 1,630.25 |
| TOTAL= | $24,401.40 |

[17.] In the receipts, we found numerous long distance phone calls. While we are sure that some of the calls concerned this case, we find it unlikely that a large number of calls were so connected. We accordingly reduced the long distance charges to an amount that we believe is reasonable.

## V. CONCLUSION

Section 1988 states that a "court, in its *discretion, may* allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988 (emphasis added). Somewhere along the line "may" seems to have been replaced with "shall." As long as a party prevails on an issue, the party's counsel fees must be paid by the losing party. And while the trial court is told to exercise its reasonable discretion in determining the amount of attorney fees, the appellate courts require the trial court to juggle a multitude of factors to find a proper award. If the court fails to mention how any one factor affected its decision, an appeal, often without much merit, seems sure to follow.

Civil right cases and their attending fee petitions have gotten out of hand. We do not believe Congress ever intended the current state of affairs. Perhaps regulatory legislation is the only solution since many attorneys do not appear to exercise much restraint in their fee petitions. In the present case, Plaintiff's counsel had a private contingency fee agreement with his client: fifty percent of the gross recovery plus costs, which would have resulted in a fee of $27,750 and costs. But pursuant to § 1988, Plaintiff's counsel sought an award of $238,951.00, in addition to requesting to retain the $27,750 fee from Plaintiff. We fail to see the justice in such a request.

In every fee petition, the prevailing party's attorney parrots the principle of law that the statutory award of counsel fees is to provide private citizens with the financial ability to address civil rights violations; the attorneys are not to receive a windfall. We find such assertions to be self-serving exaltations that are not sincerely held by many attorneys. Attorneys cite a string of boiler-plate reasons why they deserve their high hourly rates and, indeed, why their

fee should be doubled or tripled. They claim, and the courts have accepted this reason, that because they spent much time on this case, they could not spend time on other cases and, thus, they deserve a high fee. Nevertheless, they recover a sizeable sum for their efforts. There may be a contingency nature of payment in civil rights cases, but unlike other civil actions, if an attorney wins the case for his client, he is going to recover *all* of his fees and not just a percentage of the damages.

While attorney fee petitions under § 1988 supposedly are not to create a second litigation that dwarfs the underlying civil rights action, we believe many cases do just that. Determining the reasonable value of an attorney's efforts allegedly is within the trial court's discretion. Nevertheless, Supreme Court and appellate decisions have nearly tied the hands of the court so that large awards usually must be granted. In the present case, we have exhaustively reviewed the entire record, expending an inordinate amount of time analyzing every imaginable factor. Under the present case law, we find the award of attorney fees and costs made here to be reasonable and more than sufficient.

An appropriate order will be entered.